**FRONTIER CHEVROLET COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 01–71815.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 2002.

Filed May 28, 2003.

Peter T. Stanley, Billings, MT, for the petitioner.

Karen D. Utiger, Tax Division, Department of Justice, Washington, DC, for the respondent.

Before: TROTT, T.G. NELSON and THOMAS, Circuit Judges.

## OPINION

TROTT, Circuit Judge:

Frontier Chevrolet Company ("Frontier") appeals the tax court's decision that I.R.C. § 197 (" § 197") applied to a covenant not to compete entered into in connection with Frontier's redemption of 75% of its stock. We agree with the tax court that Frontier's redemption was an indirect acquisition of an interest in a trade or business; therefore Frontier had to amortize the covenant under § 197.

## BACKGROUND

### A.

The facts are set forth as stipulated by the parties before the tax court. At the time Frontier filed its petition with the Tax court, it was a corporation with its principal place of business in Billings, Montana. Frontier engaged in the trade or business of selling and servicing new and used vehicles. Roundtree Automotive

Group, Inc. ("Roundtree")[1] was a corporation engaged in the trade or business of purchasing and operating automobile dealerships and providing consulting services to those dealerships. Frank Stinson ("Stinson") was the President of Roundtree and participated in Frontier's management from 1987 to 1994.

In 1987, Roundtree purchased all of Frontier's stock. Consistent with Roundtree and Stinson's policy of management, Frontier filled the position of its executive manager with one of Stinson's long-term employees, Dennis Menholt ("Menholt"). From 1987 to 1994, Roundtree allowed Menholt to purchase 25% of Frontier's stock as part of his employment by Frontier. Before August 1, 1994, Roundtree owned 75% and Menholt owned 25% of Frontier's stock.

Frontier entered into a "Stock Sale Agreement" with Roundtree effective August 1, 1994. Pursuant to the Stock Sale Agreement, Frontier redeemed its stock owned by Roundtree using funds borrowed from General Motors Acceptance Corporation ("GMAC"). Menholt became the sole shareholder of Frontier because of the redemption.

Roundtree, Stinson, and Frontier also entered into a "Non–Competition Agreement" ("covenant") in connection with the redemption. The covenant was effective August 1, 1994, and stated in part:

> To induce [Frontier] to enter into and consummate the Stock Sale Agreement and to protect the value of the shares of stock being purchased, Roundtree and Stinson covenant, to the extent provided in Section 1 hereof, that Roundtree and Stinson shall not compete with the automobile dealership, stock of which was

---

1. This opinion refers to Roundtree and its predecessor, FS Enterprises, Inc., collectively as "Roundtree."

sold to Frontier pursuant to the Stock Sale Agreement.

Section 1 provided that Roundtree and Stinson would not compete with Frontier in the car dealership business for five years. Furthermore, in Section 1, Roundtree and Stinson acknowledged that the non-compete restrictions "are reasonable and necessary to protect the business and interest which Frontier ... is acquiring pursuant to the Stock Sale Agreement, and that any violation of these restrictions will cause substantial injury to [Frontier] or its assignees." Frontier agreed to pay Roundtree and Stinson $22,000 per month for five years as consideration for the non-compete restrictions.

Frontier's GMAC loan caused it to be leveraged with large interest expenses. During the summer of 1994, Frontier fell below the minimum working capital requirements of its franchisor and had to obtain a special waiver of working capital requirements to continue holding its franchise. In addition, Stinson and Roundtree had the ability and knowledge to compete with Frontier in the Billings, Montana automobile dealership market. Accordingly, Frontier had no known alternative to a non-compete agreement with Stinson and Roundtree to protect it from their competition. Without the covenant, Frontier may not have been able to raise capital or pay its GMAC loan.

Frontier amortized the covenant payments under § 197 on its 1994 through 1996 federal income tax returns. In 1999, Frontier filed a claim for refund for the 1995 and 1996 taxable years, asserting that the covenant should be amortized over the life of the agreement and not under § 197. Frontier and the Internal Revenue Service stipulated that the only issue for the tax court was whether Frontier must amortize the covenant not to compete under § 197.

**B.**

Section 197 provides, in relevant part:

### § 197. Amortization of goodwill and certain other intangibles

(a) General rule.—A taxpayer shall be entitled to an amortization deduction with respect to any amortizable section 197 intangible. The amount of such deduction shall be determined by amortizing the adjusted bases (for purposes of determining gain) of such intangible ratably over the 15 year period beginning with the month in which such intangible was acquired.

. . .

(c) Amortizable section 197 intangible.—For purposes of this section—

(1) In general.—Except as otherwise provided in this section, the term "amortizable section 197 intangible" means any section 197 intangible—

(A) which is acquired by the taxpayer after the enactment of this section, and

(B) which is held in connection with the conduct of a trade or business or an activity described in section 212.

. . .

(d) Section 197 intangible.—For purposes of this section—

(1) In general.—Except as otherwise provided in this section, the term "section 197 intangible" means—

. . .

(E) any covenant not to compete (or other arrangement to the extent such arrangement has substantially the same effect as a covenant not to compete) entered into in connection with an acquisition (directly or indirectly) of an interest in a trade or business or substantial portion thereof . . . .

## C.

As a matter of first impression, the tax court held that the covenant was a § 197 intangible because Frontier entered into the covenant in connection with the indirect acquisition of a trade or business. The tax court applied the plain meaning of § 197 using dictionary definitions of "acquisition" and "redemption." According to the tax court, "acquisition" means "gaining possession or control over something" and "redemption" in the context of securities means "the reacquisition of a security by the issuer." Putting the definitions together, the tax court concluded that Frontier's redemption was an acquisition within the meaning of § 197 because Frontier regained possession and control over 75% of its stock.

The tax court also noted that § 197's legislative history stated that an acquisition of stock of a corporation engaged in a trade or business is an indirect acquisition of an interest in a trade or business. In addition, the tax court pointed out in a footnote that Treas. Reg. § 1.197–2(b)(9), issued after the transaction at issue, and therefore not applicable to this case, specifically provides that taxpayers can make an acquisition under § 197 in the form of a redemption.

## JURISDICTION AND STANDARD OF REVIEW

■ We have jurisdiction pursuant to 26 U.S.C. § 7482. We review de novo the tax court's conclusions of law, including construction of the tax code. *Best Life Assur. Co. of Cal. v. Comm'r*, 281 F.3d 828, 830 (9th Cir.2002).

## DISCUSSION

■ We agree with the tax court that Frontier's redemption was an indirect acquisition of an interest in a trade or business under § 197.[2] Frontier, however, argues that it did not acquire an interest in a trade or business pursuant to the redemption because, both before and after the redemption, Frontier was engaged in the same trade or business and it acquired no new assets. There are three problems with Frontier's arguments. First, Frontier's argument reads a requirement into § 197 that taxpayers must acquire an interest in a *new* trade or business. Section 197, however, only requires taxpayers to acquire an interest in *a* trade or business. Although Frontier continued its same business, acquired no new assets, and redeemed its own stock, Frontier acquired an interest in a trade or business because it acquired possession and control over 75% of its own stock. In addition, the effect of the transaction was to transfer ownership of the company from one shareholder to another. Menholt, who previously owned only 25% of the shares, become the sole corporate shareholder.

Second, § 197's legislative history makes clear that "an interest in a trade or business includes not only the assets of a trade or business, but also stock in a corporation engaged in a trade or business." H.R. Rep. No. 103–111, at 764, *reprinted in*, 1993 U.S.C.C.A.N. 378, 995. Here, Frontier acquired stock of a corporation engaged in the trade or business of selling new and used vehicles. The result does not change merely because the acquisition of stock took the form of a redemption.

**2.** The parties do not dispute that they entered into the covenant after the effective date of § 197, or that Frontier held the covenant in connection with the conduct of a trade or business. Accordingly, the only issue we address is whether a redemption of 75% of a taxpayer's stock constitutes an indirect acqui- sition of an interest in a trade or business for purposes of § 197. We need not and do not decide whether all stock redemptions made in connection with an execution of a covenant not to compete constitute an acquisition of an interest in a trade or business within the meaning of § 197.

Indeed, the substance of the transaction was to effect a change of controlling corporate stock ownership.

Finally, before enactment of § 197, taxpayers could amortize covenants not to compete over the life of the agreement. Treas. Reg. § 1.167(a) 3. On August 10, 1993, however, Congress enacted § 197 to govern the amortization of intangibles. *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. 103–66, § 13261, 107 Stat. 312, 532–40 (1993). Congress passed § 197 to simplify amortization of intangibles by grouping certain intangibles and providing one period of amortization:

> The Federal income tax treatment of the costs of acquiring intangible assets is a source of considerable controversy between taxpayers and the Internal Revenue Service . . . .
>
> It is believed that much of the controversy that arises under present law with respect to acquired intangible assets could be eliminated by specifying a single method and period for recovering the cost of most acquired intangible assets . . . .

H.R. Rep. No. 103–111, at 760, *reprinted in,* 1993 U.S.C.C.A.N. 378, 991. Thus, Congress' intent to simplify the treatment of intangibles indicates that § 197 treats stock acquisitions and redemptions similarly—both stock acquisitions and redemptions involve acquiring an interest in a trade or business by acquiring stock of a corporation engaged in a trade or business.

## CONCLUSION

Because Frontier entered into the covenant in connection with the redemption of 75% of its stock, the covenant was a § 197 intangible and Frontier must amortize it over fifteen years under § 197. Accordingly, we AFFIRM the tax court.

**AFFIRMED.**