**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STANLEY T. JOHNSON; CONSTANCE
JOHNSON,
              *Petitioners-Appellants,*

              v.

COMMISSIONER OF INTERNAL
REVENUE,

              *Respondent-Appellee.*

No. 04-72322

Tax Ct. No.
7415-02

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
February 15, 2006—San Francisco, California

Filed March 28, 2006

Before: Procter Hug, Jr., Arthur L. Alarcón, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Alarcón

3381

**COUNSEL**

Heidi Parry Stern, Beckley Singleton, Chtd., Las Vegas, Nevada, for the petitioners-appellants.

John Schumann, United States Department of Justice, Tax Division, Washington, DC, for the respondent-appellee.

**OPINION**

ALARCÓN, Circuit Judge:

Stanley T. Johnson and his present wife, Constance Johnson ("Appellants"), appeal from the United States Tax Court's decision that there is a deficiency in income tax due from them for the taxable year 1997. The court has jurisdiction pursuant to 26 U.S.C. § 7482. The gravamen of Appellants' argument is that Internal Revenue Code ("I.R.C.") § 71, as amended in 1984 ("new § 71" or the "new law"), should apply to Mr. Johnson's deduction for alimony in the 1997 tax year, rather than the version of I.R.C. § 71 that existed prior to the amendment ("old § 71" or the "old law"). We disagree and affirm the decision of the Tax Court.

**I**

Stanley Johnson was formerly married to Joyce J. Johnson ("Joyce"). Joyce was issued a decree of divorce on May 14, 1976. Mr. Johnson was required to pay alimony to Joyce in amounts ranging from $1,250 per month at the outset to

$2,400 per month. On March 16, 1993, Mr. Johnson filed a Motion To Modify The Terms of the Divorce and Terminate Alimony Payments in the Family Division of the Clark County Nevada District Court. Joyce responded by filing a Countermotion to Increase Alimony Payments. On April 14, 1997, the district court released its Findings of Fact and Conclusions of Law. Mr. Johnson then filed a Notice of Appeal to the Supreme Court of the State of Nevada and was granted his Application for Stay Re: Increase in Alimony.

Prior to oral argument in the Supreme Court of Nevada, Mr. Johnson and Joyce entered into a Settlement and Release Agreement ("the 1997 Agreement"). It provided that (1) Joyce would dismiss with prejudice her counterclaim to increase alimony payments, (2) the Nevada District Court would not retain jurisdiction over any further claims in the case,[1] and (3) Mr. Johnson would pay $400,000 in one lump-sum no later than Thursday, July 10, 1997. The 1997 Agreement specified that the payment "shall be Stanley's final alimony payment to Joyce and constitute total and complete liquidation and discharge of all debts Stanley owes to Joyce." The agreement makes no reference to I.R.C. § 71. On July 15, 1997, after Mr. Johnson made the payment pursuant to the 1997 Agreement, Joyce's Countermotion was dismissed with prejudice by the Family Division of the District Court for Clark County, Nevada. The dismissal order also stated that Mr. Johnson had "discharged any and all obligations to pay Joyce alimony" by the terms of the 1997 Agreement.

On their tax return for the 1997 tax year, Appellants claimed a deduction for their alimony payments from their income in the amount of $424,000. The Commissioner disallowed $400,000 of that deduction, and issued a notice of deficiency determination. Appellants filed a petition in the Tax Court seeking a redetermination of the deficiency. In response

---

[1]We express no opinion as to the validity of the clause specifying that the family court is to be deprived of any further jurisdiction over this case.

to the parties' cross-motions for summary judgment, the Tax Court granted partial summary judgment in favor of the Appellee.[2] The Tax Court determined that "new section 71 is applicable only to divorce instruments executed after December 31, 1984, or modified after December 31, 1984, where the modified instrument states that the amended version of section 71 will apply." *Johnson v. Commissioner,* No. 7415-02, slip. op. at 5 (quoting *Marten v. Commissioner,* 78 T.C.M (CCH) 584, 585 (1999), *aff'd sub nom. Commissioner v. Lane,* 40 Fed. Appx. 385 (9th Cir. 2002)). The Tax Court found "the 1997 Agreement, taken together with the stipulation and dismissal order, constituted a modification of the divorce decree." *Id.* Accordingly, the Tax Court held that the law applicable to divorce instruments executed before December 31, 1984 applies to the instant case. *Id.* In its final decision—the Tax Court held that there is a deficiency in tax due from Appellants in the amount of $153,167. The Tax Court's conclusions of law, including construction of the tax code, are reviewed de novo. *Frontier Chevrolet Co. v. Commissioner*, 329 F.3d 1131, 1134 (9th Cir. 2003).

## II

**[1]** Payments are deductible as "alimony" pursuant to I.R.C. § 215(a). The term "alimony" is defined under I.R.C. § 71. The pertinent part of § 71(b)(1) provides:

> (1) In general. The term "alimony or separate maintenance payment" means any payment in cash if—

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

---

[2]The Tax Court found a triable issue of material fact remained "as to what portion, if any, of the $400,000 alimony paid constitutes arrearage." *Id.* The parties entered into a stipulation providing that $13,750 of the $400,000 payment is deductible as "arrearages" for past due alimony.

(B)   the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215.

(C)   in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D)   there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Section 71 was amended by Congress in 1984 as part of the Deficit Reduction Act (DEFRA). The old § 71 provides that payments are only deductible if they are made periodically. I.R.C. of 1954 § 71(a)(1) (current version at 26 U.S.C. § 71 (2006)).[3] However, the language requiring that payments be periodic in order to be deductible is absent in new § 71. I.R.C. § 71. Accordingly, if the old law applies, the $400,000 payment to Joyce is not deductible. It would be deductible under the new law.

---

[3]The old law states:

> If a wife is divorced or legally separated from her husband under a decree of divorce or separate maintenance, the wife's gross income includes *periodic payments* (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

I.R.C. of 1954 § 71(a)(1) (current version at 26 U.S.C. § 71 (2006)) (emphasis added).

Appellants argue that the new § 71 applies because the 1997 Agreement is a divorce or separation instrument according to § 71(b)(2)(A). Pursuant to § 71(b)(2), the term "divorce or separation instruments" is defined as:

(A)   a decree of divorce or separate maintenance or a written instrument incident to such a decree,

(B)   a written separation agreement, or

(C)   a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

However, Appellants' argument is not persuasive because the most important question before the court is not whether the 1997 Agreement, standing alone, satisfies the requirements of the new law. Rather, the Court must determine whether the 1997 Agreement is merely a modification of the 1976 divorce decree, or a separate stand alone instrument of divorce.

**[2]** This case turns on the relationship between I.R.C. § 71, and § 422(e) of DEFRA. Section 422(e) of DEFRA defines the date on which the new law became effective, and provides guidance as to whether the new law applies to instruments of divorce created prior to the effective date of the legislation. It provides *inter alia*:

(1)   In general. Except as otherwise provided in this subsection, the amendments made by this section [amending 26 U.S.C. §§ 71, 215, 219, 682, 6676, and 7701] shall apply with respect to divorce or separation instruments (as defined in section 71(b)(2) of the Internal Revenue Code of 1954 [1986], as amended by this section) executed after December 31, 1984.

(2)   Modifications of instruments executed before January 1, 1985. The amendments made by this sec-

tion shall also apply to any divorce or separation instrument (as so defined) executed before January 1, 1985, but modified on or after such date *if the modification expressly provides that the amendments made by this section shall apply to such modification*.

DEFRA, § 422(e), Pub. L. 98-369, 98 Stat. 494, 798 (emphasis added).

Relying on the language of § 422(e)(2), the Commissioner argues that the Tax Court was correct in determining that the old law applies. The parties agree that new § 71 would apply by its own terms if the 1997 Agreement is construed to be a new written instrument "incident to a divorce," and not a further modification of the original 1976 decree, because the rule expressed in § 422(e)(1) of DEFRA would then govern. If, however, the 1997 Agreement is merely a modification of the 1976 divorce decree, as the Commissioner contends, the old law governs. DEFRA, § 422(e)(2), 98 Stat. at 798.

Appellants maintain the first paragraph of DEFRA, § 422(e) is independent of the second paragraph. They argue that the first paragraph of the statute controls this case and it is unnecessary to look at the second paragraph. However, Appellants argument is not persuasive because the first part of the statute begins with the phrase "except as otherwise provided in this subsection." DEFRA, § 422(e), Pub. L. 98-369, 98 Stat. at 798. This language indicates that the first and second paragraph of the statute should be read together.

Appellants also contend any instrument, including the 1997 Agreement, that materially alters the timing or amount of alimony payments is a new stand-alone instrument of divorce and not therefore subject to the second paragraph of DEFRA § 422(e). They cite Treasury Regulation § 1.71-1T[4] to support

---

[4]The regulation is set forth in the form of questions and answers. It provides in pertinent part:

that contention. This Court will normally "defer to an agency's construction of a statute it administers" provided that its interpretation is not contrary to congressional intent. *Miller v.*

---

Q-26 When does section 71, as amended by the Tax Reform Act of 1984, become effective?

A-26 Generally, section 71, as amended, is effective with respect to divorce or separation instruments (as defined in section 71(b)(2)) executed after December 31, 1984. If a decree of divorce or separate maintenance executed after December 31, 1984, incorporates or adopts without change the terms of the alimony or separate maintenance payments under a divorce or separation instrument executed before January 1, 1985, such decree will be treated as executed before January 1, 1985. A change in the amount of alimony or separate maintenance payments or the time period over which such payments are to continue, or the addition or deletion of any contingencies or conditions relating to such payments is a change in the terms of the alimony or separate maintenance payments. For example, in November 1984, A and B executed a written separation agreement. In February 1985, a decree of divorce is entered in substitution for the written separation agreement. The decree of divorce does not change the terms of the alimony A pays to B. The decree of divorce will be treated as executed before January 1, 1985 and hence alimony payments under the decree will be subject to the rules of section 71 prior to amendment by the Tax Reform Act of 1984. If the amount or time period of the alimony or separate maintenance payments are not specified in the pre-1985 separation agreement or if the decree of divorce changes the amount or term of such payments, the decree of divorce will not be treated as executed before January 1, 1985, and alimony payments under the decree will be subject to the rules of section 71, as amended by the Tax Reform Act of 1984. Section 71, as amended, also applies to any divorce or separation instrument executed (or treated as executed) before January 1, 1985 that has been modified on or after January 1, 1985, if such modification expressly provides that section 71, as amended by the Tax Reform Act of 1984, shall apply to the instrument as modified. In this case, section 71, as amended, is effective with respect to payments made after the date the instrument is modified.

Treas. Reg. § 1.71-1T, Q. & A. 26.

*Commissioner*, 310 F.3d 640, 644 (9th Cir. 2002) (quoting *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1014 (9th Cir. 2000)). The Tax Court was correct in determining that the cited regulation is inapposite pursuant to Tax Decision 7973, which states:

> These temporary regulations are presented in the form of questions and answers. The questions and answers are not intended to address comprehensively the issues raised by sections 1041, 71, 215 and 152(e). Taxpayers may rely for guidance on these questions and answers, which the Internal Revenue Service will follow in resolving issues arising under sections 1041, 71, 215 and 152(e). No inference, however, should be drawn regarding questions not expressly raised and answered.

T.D. 7973, 1984; 49 Fed. Reg. 34451. The cited regulation applies only to the narrow example given therein—a pre-amendment separation agreement that is substituted by a post-amendment divorce decree that makes no substantive changes to the agreement. Treas. Reg. § 1.71-1T, Q. & A. 26.

Appellants also argue that any post-1984 instrument of divorce that materially alters the timing or amount of alimony payments is automatically governed by the new law by operation of § 422(e)(1). They contend it was not necessary to provide in the 1997 Agreement that the new law applies pursuant to § 422(e)(2). It follows from Appellants' interpretation that the second part of the statute, DEFRA § 422(e)(2), applies to instruments that do not materially alter the terms of the alimony payments defined by pre-1984 instruments. If this court were to accept Appellants' construction of the statute, the second part of the statute would have no effect, as it would apply only where a new instrument left the terms of the previous instrument unchanged. "[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Kawaauhau v.*

*Geiger,* 523 U.S. 57, 62 (1998) (quoting *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837 (1988)). Appellants have failed to persuade us that Congress would enact a statute governing the deduction of alimony payments that would only apply in cases where the parties drafted a document that has no material impact on the timing or amount of alimony payments.

**[3]** A more sensible reading of § 422(e)(2) would allow the parties to negotiate the allocation of tax liability for any agreement that materially alters the timing or amount of alimony payments. Contrary to Appellants' suggestion, it seems likely that the term "[m]odifications of instruments executed before January 1, 1985" in § 422(e)(2) refers to modifications of pre 1985 instruments by post-1985 instruments that govern the amount and timing of alimony payments.

Nevertheless, Appellants would still prevail in the instant case if the 1997 Agreement could be construed as a new stand-alone instrument of divorce as opposed to a modification of the 1976 divorce decree. However, there was only one divorce decree in the instant case and it was modified several times. In their response to the Commissioner's requests for admissions, Appellants state "[p]ursuant to a number of court orders, commencing August 3, 1976, and continuing through June 27, 1997, petitioner paid alimony to Joyce Johnson in amounts ranging from $1,250 per month at the outset to $2,400 per month." Moreover, the motion filed by Appellants that gave rise to the instant litigation was styled a "Motion to Modify Decree of Divorce and to Modify or Terminate Alimony Payments." Joyce filed a "Countermotion to Increase Alimony." The 1997 Agreement therefore stems from a controversy over the proposed modification of alimony provisions of the 1976 divorce decree.

**[4]** The Settlement and Release Agreement provides that the payment was made in contemplation of Mr. Johnson's Motion and Joyce's Countermotion to alter the alimony terms

of the 1976 decree. The final Stipulation and Order for Dismissal entered by the district court also provides that Joyce agrees to dismiss her Countermotion for an increase in her alimony payments. It further provides that "Stanley have no further remaining obligation to pay Joyce any additional alimony, support or other sums whatsoever, Stanley having fully discharged [his obligations under the separate Settlement and Release Agreement]." It follows that the 1997 Agreement, and the $400,000 payment, settled a dispute over the modification of the alimony provisions of the 1976 divorce decree. It was not a separate stand-alone agreement. Rather, it was a modification of a divorce decree created prior to 1984. Because it was a modification of a pre-1984 divorce decree, the parties needed to specify in their agreement that the new law applies pursuant to DEFRA § 422(e)(2) if Appellants wanted the benefit of the deduction for alimony paid to Joyce. DEFRA, § 422(e), Pub. L. 98-369, 98 Stat. 494, 798. They did not do so. Accordingly, the Tax Court correctly determined that Appellants are not entitled to deduct the lump sum alimony payment.

### III

[5] We also conclude that there is no merit to Appellants' secondary argument that a portion of the $400,000 payment is deductible pursuant to old § 71(c)(2). The old law states: "installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments." I.R.C. of 1954 § 71(c)(1) (current version at 26 U.S.C. § 71 (2006)). Only periodic payments are deductible under the old law. I.R.C. of 1954 §§ 71, 215 (current version at 26 U.S.C. §§ 71, 215 (2006)). Subsection (c)(2) of the old law provides an exception—that installment payments may be treated as periodic payments provided that the principal "is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument or agreement." I.R.C. of 1954

§ 71(c)(2) (current version at 26 U.S.C. § 71 (2006)). In such case, ten percent of the principal could be deducted in any one year. *Id.*

**[6]** Appellants argue that the lump-sum settlement payment of $400,000 should be construed as a single installment in a set of installments that lasted more than ten years because Mr. Johnson has been making payments to Joyce since 1976. But a lump-sum final payment and a periodic payment are mutually exclusive concepts, and appear to be treated as such under old § 71(c)(1). In *Lounsbury v. Commissioner,* 321 F.2d 925 (9th Cir. 1963), this court rejected a similar argument. *Id.* at 926. We held in *Lounsbury* that "lump sum payments are not deductible as periodic payments." *Id.* at 927.

**[7]** Moreover, it is unclear how old § 71(c) could possibly apply because the exception to the old law is based on the premise that the installments discharge a principal sum defined in an instrument of divorce. I.R.C. of 1954 § 71(c) (current version at 26 U.S.C. § 71 (2006)); *see also* Revenue Rule 78-415. However, no agreement in the instant case provided for a principal sum to be paid in installments. Because the 1976 divorce decree never specified a principal sum of alimony, Appellants' reliance on the old law, and Revenue Rule 78-415, is misplaced.

AFFIRMED.