149 T.C. No. 6

UNITED STATES TAX COURT

MARK A. RUTKOSKE, SR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

FELIX RUTKOSKE, JR. AND KAREN E. RUTKOSKE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16300-14, 16301-14.          Filed August 7, 2017.

In 2009 a limited liability company (LLC) in which Ps were members owned 355 acres of land (property) that it leased to others who used it as farmland. In 2009 LLC conveyed a conservation easement restricting the development rights on the property to E, a public charity, in exchange for $1,504,960. Ps reported the bargain element of the transaction (allegedly $1,335,040) as a noncash charitable contribution. Following the conveyance of the development rights, the LLC sold its interest in the property to Q, an unrelated party, for $1,995,040.

On their respective income tax returns, Ps classified themselves as "qualified farmers" within the purview of I.R.C. sec. 170(b)(1)(E). A qualified farmer, defined as a taxpayer whose gross income from the trade or business of farming (as defined by I.R.C. sec. 2032A(e)(5)) is greater than 50% of his/her total gross income for the

year, may deduct the value of a qualified conservation contribution of up to 100% of his/her contribution base for the year of contribution. I.R.C. sec. 2032A(e)(5) sets forth specific activities that constitute the trade or business of farming. Ps maintain that the proceeds from the sale of the property, as well as the proceeds from the sale of development rights attached thereto, while not specifically listed in I.R.C. sec. 2032A(e)(5), constitute income from the trade or business of farming.

Held: Pursuant to sec. 1.703-1(a)(2)(iv), Income Tax Regs., Ps are treated as having directly conveyed the conservation easement to E.

Held, further, Ps are not "qualified farmers" within the purview of I.R.C. sec. 170(b)(1)(E). Neither the sale of the property nor the sale of development rights attached thereto constitutes an activity that is included in the trade or business of farming as defined by I.R.C. sec. 2032A(e)(5).

Held, further, Ps are limited by I.R.C. sec. 170(b)(1)(E)(i) to a charitable contribution deduction of 50% of their respective contribution bases with respect to the conveyed conservation easement.

Jay S. Block, for petitioners.

David A. Indek and Nancy M. Gilmore, for respondent.

OPINION

JACOBS, Judge:  These consolidated cases are before the Court on the parties' cross-motions for partial summary judgment.  The issue raised in each party's motion is whether petitioners Mark and Felix Rutkoske were "qualified farmers" at the time they, through Browning Creek, LLC (Browning Creek), a limited liability company of which they were the only members, conveyed a conservation easement restricting the development rights on 355 acres to a public charity for a bargain price.  That conveyance gave rise to the allowance of a charitable contribution deduction under section 170(b)(1)(E).[1]  Mark and Felix Rutkoske maintain they are qualified farmers; respondent asserts they are not.  If the conveyance of the conservation easement was made by qualified farmers, petitioners may deduct a qualified conservation contribution of up to 100% of their respective contribution bases, less the amount of all other charitable contributions allowable under paragraph (1) of subsection (b), for the year of contribution.  If the donation of the conservation easement was not made by qualified farmers, then the deduction is limited to 50% of the donors' respective

---

[1]As will be seen infra pp. 11-12, pursuant to sec. 1.703-1(a)(2)(iv), Income Tax Regs., petitioners are treated as having directly made the contribution of the conservation easement.

contribution bases, less the amount of all other charitable contributions allowable under paragraph (1) of subsection (b) in the year of contribution.

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended, for the relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Background

At the time they filed their respective petitions, petitioners resided in Delaware. Petitioner in docket No. 16300-14 is Mark A. Rutkoske, Sr. Petitioners in docket No. 16301-14 are Felix Rutkoske, Jr., and Karen E. Rutkoske, husband and wife. Mark Rutkoske and Felix Rutkoske are brothers. Karen Rutkoske is a party by virtue of having filed a joint income tax return with her husband.

In 2009 Mark and Felix Rutkoske were in the business of farming. Through numerous entities they owned seven parcels of land in Maryland and Delaware, totaling 1,455 acres in 2009. One such parcel of land, as is relevant in this matter, was 355 acres of land (property) known as Browning Creek Farm in Earleville, Maryland. The property was owned by Browning Creek, and each Rutkoske brother was a 50% member of Browning Creek. For Federal income tax purposes,

Browning Creek was treated as a partnership.[2] Browning Creek was in the

business of leasing land. Browning Creek leased the property to Rutkoske Farms,

a Delaware general partnership through which the Rutkoske brothers farmed the

property and the six other parcels of land.[3] During 2009 the brothers each

_____

[2]Partnerships, in general, are subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 1(a), 96 Stat. at 324. Sec. 6226(f) provides that in a TEFRA proceeding we have jurisdiction to determine all partnership items of the partnership for the partnership tax year to which a notice of final partnership administrative adjustment relates, including the proper allocation of such items among the partners, penalties, additions to tax, or other amounts which relate to a partnership item adjustment. However, sec. 6231(a)(1)(B)(i) provides that an entity will not be treated as a "partnership" for purposes of the TEFRA procedures if the entity has "10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner." Browning Creek's two members are individuals; consequently, it falls within the sec. 6231(a)(1)(B)(i) exception and the TEFRA procedures are inapplicable.

[3]The Rutkoske brothers employed a complex structure to own and operate their farming business. The property owned by Browning Creek was leased to and operated by Rutkoske Farms. The partners of Rutkoske Farms were Felix Rutkoske (holding a 20% interest), Mark Rutkoske (holding a 20% interest), Superior Ag, Inc. (a corporation holding a 20% interest), Sassafras Ag, Inc. (a corporation holding a 20% interest), and Russet Ag, Inc. (a corporation holding a 20% interest). The stockholders of Superior Ag, Inc., were Felix and Mark Rutkoske, each holding 50% of the outstanding stock. The stockholders of Sassafras Ag, Inc., were Felix Rutkoske and Mark Bice, each holding 50% of the outstanding stock. The shareholders of Russet Ag, Inc., were Mark Rutkoske and Mark Bice, each holding 50% of the outstanding stock. Another business, Rutkoske Brothers, Inc. (an S corporation owned by the Rutkoske brothers, each of whom held 50% of the corporation's outstanding stock), owned the machinery and equipment used in working the farms.

rendered at least 2,500 hours of physical labor and management services in growing and harvesting corn, barley, wheat, and soybeans on all of their properties. They borrowed money when necessary and joined the U.S. Department of Agriculture's Farm Service Agency subsidy programs. In fall 2008, the brothers, through Rutkoske Farms, planted wheat on the property and reserved to themselves its harvesting and the proceeds derived from the sale thereof.

On June 5, 2009, Browning Creek conveyed a conservation easement to Eastern Shore Land Conservancy, Inc.,[4] restricting the development rights attached to the property in exchange for $1,504,960. In connection with the granting of the easement, Browning Creek obtained an appraisal which set forth the fair market value of the unencumbered property as of June 5, 2009, as $4,970,000 and the fair market value of the property after the granting of the conservation easement as $2,130,000. After conveying the conservation easement, later on June 5, 2009, Browning Creek sold its interest in the property to Quiet Acre Farm, Inc. (Quiet Acre), for $1,995,040.[5]

---

[4]Eastern Shore Land Conservancy, Inc., is a sec. 501(c)(3) public charity. See IRS EO Select Check, https://www.irs.gov/charities-non-profits/exempt-organizations-select-check (last visited Jul. 26, 2017).

[5]We note that after the sale of the property, petitioners, through Rutkoske Farms, continued to actively farm full time the 1,100 acres on the six other farms,

(continued...)

Browning Creek reported that its total basis in the property was $1,745,885. Browning Creek allocated $240,828 of this amount to the conservation easement and $1,505,057 to its remaining interest in the property. Browning Creek reported a capital gain of $1,754,115 from the sale of the property: $1,264,132 from the sale of the conservation easement, and $489,983 from the sale of its remaining property interest. Browning Creek also reported a noncash charitable contribution for the conservation easement of $1,335,040--the difference between the purported value of the property before the conveyance of the conservation easement, i.e., $4,970,000, and the purported value of the property after the conveyance of the easement, i.e., $2,130,000, minus the $1,504,960 Browning Creek received from the sale of the conservation easement.[6]

Petitioners each filed their 2009 Forms 1040, U.S. Individual Income Tax Return, late. As 50% partners of Browning Creek, the Rutkoske brothers each claimed, as a passthrough item, noncash charitable contribution deductions of $667,520 on Schedules A, Itemized Deductions. The Rutkoske brothers reported the gain from the sale of Browning Creek's interest in the property to Quiet Acre

_____

[5](...continued)
growing and harvesting wheat, soybeans, corn, and barley.

[6]Respondent disputes the amount claimed as the noncash charitable contribution deduction for the conservation easement.

on Schedules D, Capital Gains and Losses, of their respective income tax returns as long-term capital gain passed through from Browning Creek, with Mark Rutkoske reporting $877,057 and Felix and Karen Rutkoske reporting $877,058.[7]

For 2009 Mark Rutkoske reported wage income of $16,800, interest income of $453, and a loss from partnerships and S corporations of $177,524. For 2009 Felix and Karen Rutkoske reported wage income of $28,745, interest income of $586, and a loss from partnerships and S corporations of $177,526.

## Discussion

Summary judgment is appropriate if the pleadings and other materials show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of showing that there is no genuine dispute of material fact, and the Court views all factual materials and inferences in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). Rule 121(d) provides that where the moving party properly makes and supports a motion for summary judgment "an adverse party may not rest upon the mere

---

[7]The difference between the amounts reported by the brothers most likely is due to rounding.

allegations or denials of such party's pleading" but rather must set forth specific facts, by affidavits or otherwise, "showing that there is a genuine dispute for trial." The parties agree that there are no facts in dispute as to the "qualified farmer" issue.

Subparagraph (E) of section 170(b)(1)[8] governs the deductibility of a "qualified conservation contribution" by an individual.[9] Section 170(b)(1)(E)(i) generally limits the deduction from such a donation[10] to 50% of the donor's "contribution base", defined by section 170(b)(1)(G) as the taxpayer's adjusted

---

[8]When this section was first enacted, sec. 170(b)(1)(E)(vi) provided that "[t]his subparagraph shall not apply to any contribution made in taxable years beginning after December 31, 2007." Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 1206(a)(1), 120 Stat. at 1069. The sunset provision was extended in subsequent years, and in 2015 the Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. Q, sec. 111(a)(1), 129 Stat. at 3046 (2015), repealed this sunset provision.

[9]Sec. 170(a) is the general rule governing charitable contributions. It provides that an individual is allowed a deduction for any charitable contribution (as defined in sec. 170(c)) payment of which is made within the taxable year. Sec. 170(b)(1)(A) generally limits the amount of the deduction to 50% of the individual's contribution base. Donating taxpayers, in general, may carry forward a suspended donation to each of the five succeeding taxable years, subject to the 50% contribution base limitation. Sec. 170(d)(1).

[10]Sec. 170(h)(1) defines qualified conservation contribution as a contribution of a qualified real property interest to a qualified organization exclusively for conservation purposes. Respondent does not dispute that the conservation easement in this case is a qualified conservation contribution.

gross income (computed without regard to any net operating loss carryback for the taxable year) less the value of his/her other charitable contributions for the year.

Section 170(b)(1)(E)(iv) provides a special rule for contributions of property used in agriculture or livestock production. If the individual is a "qualified farmer or rancher" for the taxable year for which the contribution is made, then that individual may deduct the value of the donation up to 100% of the his/her contribution base, less the amount of all other charitable contributions allowable under section 170(b)(1) made during the year. Section 170(b)(1)(E)(v) defines the term "qualified farmer or rancher" as an individual whose gross income from the trade or business of farming (within the meaning of section 2032A(e)(5)) is greater than 50% of the individual's gross income for the taxable year.

Section 2032A(e)(5) sets forth activities, the revenues of which constitute income from the trade or business of farming:

> (A) cultivating the soil or raising or harvesting any agricultural or horticultural commodity (including the raising, shearing, feeding, caring for, training, and management of animals) on a farm;

> (B) handling, drying, packing, grading, or storing on a farm any agricultural or horticultural commodity in its unmanufactured state, but only if the owner, tenant, or operator of the farm regularly produces more than one-half of the commodity so treated; and

> (C) (i) the planting, cultivating, caring for, or cutting of trees, or

> (ii) the preparation (other than milling) of trees for market.[11]

To determine whether the contribution of the conservation easement qualifies for the special rule of section 170(b)(1)(E)(iv), a fraction must be created, the numerator of which is the income derived from the trade or business of farming, and the denominator of which is the donor's gross income. See sec. 170(b)(1)(E)(v). The parties disagree as to the numerator amount. They agree as to the denominator amount.

We are mindful that although Browning Creek owned the property, it is the Rutkoske brothers who are treated as having contributed the conservation easement to Eastern Shore Land Conservancy, Inc. Browning Creek is treated as a partnership for Federal tax purposes and, as such, is not subject to the income tax imposed by chapter 1. See sec. 701. Thus, pursuant to section 703(a), while the taxable income of a partnership is generally computed in the same manner as in the case of an individual, the deduction for charitable contributions provided in section 170 is not allowed to the partnership. Specifically, section 1.703-

---

[11]Sec. 2032A is a special rule regarding the valuation of certain farm and real property for purposes of the estate tax. Specifically, pursuant to sec. 2032A(a) the property is valued according to the use under which it qualifies as qualified real property.

1(a)(2)(iv), Income Tax Regs., provides that "[e]ach partner is considered as having paid within his taxable year his distributive share of any contribution or gift, payment of which was actually made by the partnership within its taxable year ending within or with the partner's taxable year. This item shall be accounted for separately by the partners as provided in section 702(a)(4)." Section 702(a)(4) provides that in determining his/her income tax, each partner shall take into account separately his/her distributive share of the partnership's charitable contributions. Thus, in resolving the problem at hand, we ignore Browning Creek and look at each Rutkoske brother to determine whether he is a qualified farmer.

Respondent's assertion with regard to each Rutkoske brother's numerator amount is straightforward: Section 2032A(e)(5) sets forth a list of specific activities, the revenues derived from which constitute farming income. Sale of land and the sale of the rights to develop land (i.e., the conservation easement bargain sale) are not activities listed in section 2032A(e)(5); therefore proceeds from the sale of land and the sale of the rights to develop land do not constitute income from the trade or business of farming for purposes of section 170(b)(1)(E)(v). Moreover, we are mindful that under respondent's interpretation, Felix Rutkoske's capital gain income of $877,057 arising from the sale of the property alone is greater than 50% of his gross income for 2009.

Likewise, Mark and Karen Rutkoske's capital gain income of $877,058 arising from the sale of the property alone is greater than 50% of their gross income for 2009.

Petitioners have a different position. They assert that the income derived from the sale of the conservation easement as well as from the sale of the property constitutes income derived from the trade or business of farming. Petitioners point out that section 170(b)(1)(E)(v) provides: "[T]he term 'qualified farmer or rancher' means a taxpayer whose gross income from the trade or business of farming (within the meaning of section 2032A(e)(5)) is greater than 50 percent of the taxpayer's gross income for the taxable year." Petitioners maintain that the business of farming requires monetary capital and investment in tangible physical capital, including land, buildings and structures, and machinery and equipment. Hence they posit:

> proceeds from a sale of an asset used in the business of farming constitute income from the business of farming. Accordingly, the proceeds of sale of a tractor used in the business of farming would be characterized as income from the business of farming. Proceeds from a sale of real estate used in the business of farming likewise generates income from the business of farming.

Petitioners argue that the sale of the property falls under the strictures of section 2032A(e)(5) in that "farm real estate is an asset integral to raising, harvesting

and/or producing saleable agricultural or horticultural commodities as well as the

handling, drying, packing, grading, and or storing the agricultural and/or

horticultural commodities produced for sale." Thus petitioners assert that

proceeds from the sale of real estate used in the business of farming generates

income from the trade of business of farming.

Petitioners state:

The phases of a life cycle in the business of farming are similar to the life cycle phases of other businesses; there exists a start period, a maturation or growth period, a transitional wind up period, and a termination/cessation. Continuation of business activity during the wind up period includes communications and correspondence with suppliers and customers; adjusting, altering, and prorating periodic monetary arrangements such as periodic business insurance arrangements; management of and disposition of seed inventory; management of and disposition of packing supplies inventory; management of and disposition of fuel inventory; continued compliance with tax filing and tax payment responsibilities; payment of bills and payment on outstanding debts. As illustrated in the below examples, proceeds from disposition of a business asset constitute business income, regardless whether such sale occurs during the maturation and growth phase of the business life cycle or whether such disposition occurs during the transitional wind up phase.

If a farmer receives non-refundable money from a developer in exchange for the farmer granting the developer an option to buy the farmer's farmland exercisable for a six month period, and if at the end of the six months the developer fails to exercise the option, the income to the farmer on non exercise of the option should be characterized as income generated in the business of farming.

When Utility Company A seeks to acquire Utility Company B, and Utility Company A subsequently walks away from the potential acquisition and pays Utility Company B an acquisition cancellation fee, then Utility Company B's income from such transaction should be considered as income from the utility business.

If a farmer rents from a landlord under a long term lease, and the landlord seeks to break the lease in order to sell the land to a shopping center developer, the lease cancellation fee paid by the landlord to the farmer should be characterized as income from the business of farming.

Publicly traded business have disclosed in separate sections of their Profit & Loss Statements, income from discontinued operations. Such income from discontinued operations is still characterized as income from that company's business, despite that such income is realized during the wind down period.

In resolving the parties' cross-motions, we look to the wording of the statute to construe its meaning. See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); Frontier Chevrolet Co. v. Commissioner, 116 T.C. 289, 293 (2001), aff'd, 329 F.3d 1131 (9th Cir. 2003). When a statute is clear on its face, we require unequivocal evidence of legislative purpose before interpreting the statute to override the plain meaning of the words used therein. Frontier Chevrolet Co. v. Commissioner, 116 T.C. at 293.

Section 170(b)(1)(E)(v) is written in straightforward terms: A qualified farmer or rancher is a individual whose gross income from the trade or business of farming, which is defined as the activities listed in section 2032A(e)(5), is greater

than 50% of his/her gross income for the year. Neither the disposal of property nor the disposal of the development rights attached thereto is an activity listed in section 2032A(e)(5).

We recognize that an individual engaged in the trade or business of farming most likely will engage in activities beyond those enumerated in the statute. The sale of used equipment by farmers is common. The acquisition and disposition of land is necessary because without land none of the section 2032A(e)(5) activities could be carried on. But we are not reviewing petitioners' activities in the context of determining their operation expense deductions or any other provision of the Code that relates to a business' general operations.

Section 170(b)(1)(E) is a narrowly tailored provision intended to provide a tax benefit for a specific action, namely, the contribution of conservation easements by qualified farmers. We will not broaden the scope of activities listed in section 2032A(e)(5) beyond that ordinarily associated with them because our sole duty is to interpret the law as written by Congress.

We do not agree with petitioners' assertion that the disposal of property (and the development rights attached thereto) constitutes cultivating the soil, raising agricultural or horticultural commodities, the handling of such commodities, or tree farming. To cultivate means "[t]o prepare and improve

(land), as by fertilizing or plowing, for raising crops". Webster's II New Riverside University Dictionary 335 (1988); to "raise" in the context of agriculture means "[t]o grow or breed"; id. at 972; and to "harvest" means "[t]he act or process of gathering a crop"; id. at 566. For the contribution of the conservation easement to qualify for the special rule of section 170(b)(1)(E)(iv), we look to the income derived from the sale of the agricultural and/or horticultural products created when engaging in these activities, not from the sale of the land on which the agricultural and/or horticultural products are grown.

We acknowledge that the Rutkoske brothers are farmers and that they continued in the agricultural business after the property was sold. We further acknowledge that they used most of the proceeds derived from the sale of the property in their continuing farming operations; but being a farmer does not make one a "qualified farmer" for purposes of section 170(b)(1)(E)(iv)(I). The statute is unambiguous: A qualified farmer or rancher is defined as a taxpayer whose gross income from the trade or business of farming is greater than 50% of his/her gross income for the year. The statute speaks to income, not spending.

In any case, even if we were to agree with petitioners with respect to their interpretation of section 170(b)(1)(E), they still would not prevail. Although petitioners are treated as having directly contributed the property, section 702(b)

provides that "[t]he character of any item of income, gain, loss, deduction, or credit included in a partner's distributive share under paragraphs (1) through (7) of subsection (a) [of sec. 702] shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership." Browning Creek was not in the business of farming; it was in the business of leasing real estate. Thus, for Federal income tax purposes, the characterization of income from the sale of the property by Browning Creek (i.e., income from the sale of a real estate asset) flows through to the Rutkoske brothers, and in their hands the sale proceeds do not constitute income from the trade or business of farming.

We recognize that the statute makes it difficult for a farmer to receive a maximum charitable contribution deduction by disposing of a portion of property in a year in which he/she donates a conservation easement, especially in a State with high land values. But it is not our task to rewrite a statute.

To conclude, we will grant respondent's motion for partial summary judgment, filed September 2, 2016, and deny petitioners' motion for partial summary judgment, filed September 2, 2016. Because respondent disputes petitioners' valuation for the conservation easement, a trial with respect to the valuation likely will be necessary.

To reflect the foregoing,

            <u>An appropriate order will be issued</u>.