# United States Court of Appeals
## For the First Circuit

No. 07-2767

UNITED STATES OF AMERICA,

Appellee,

v.

PEDRO JOSÉ VIDAL-REYES,
a/k/a PEDRO LUIS RODRÍGUEZ,
a/k/a/ PEDRO LUIS RODRÍGUEZ-TRINIDAD,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

William W. Fick, Federal Defender Office, for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief for
appellee.

April 3, 2009

**TORRUELLA**, <u>Circuit Judge</u>. Defendant-Appellant Pedro José Vidal-Reyes ("Vidal"), a citizen of the Dominican Republic, pled guilty to aggravated identity theft under the federal aggravated identity theft statute, 18 U.S.C. § 1028A, as well as to several non-predicate counts relating to his attempt to pass himself off as a United States citizen on a previous occasion. He was sentenced to a mandatory term of imprisonment of two years on the identity theft count, followed by fifteen months on the other counts. The sentencing court indicated that it believed that it lacked authority under § 1028A to impose a lighter sentence.

Vidal now challenges his sentence, alleging, inter alia, that the district court erred as a matter of law in finding that it could not consider the mandatory two-year sentence imposed by 18 U.S.C. § 1028A in assigning a sentence for Vidal's non-predicate offenses. His challenge raises a question of first impression in this circuit concerning the extent to which 18 U.S.C. § 1028A curbs a district court's discretion to take the statute's mandatory sentence into account when sentencing a defendant on other counts of conviction.

After careful consideration, we conclude that the district court erred in determining that it lacked authority to consider 18 U.S.C. § 1028A's mandatory two-year sentence for aggravated identity theft in sentencing the defendant for <u>non-</u>

predicate crimes charged in the same indictment. We therefore vacate the sentence imposed and remand for resentencing.

## I. Background

Vidal pled guilty to all counts. We therefore recite the facts as contained in the pre-sentence report ("PSR"), sentencing memoranda, and transcripts of the plea and sentencing hearings. See United States v. Marks, 365 F.3d 101, 102 (1st Cir. 2004); United States v. Santos, 357 F.3d 136, 138 (1st Cir. 2004). Moreover, as Vidal challenges only his sentence, the facts recounted are limited to those necessary to addressing that claim.

### A. Factual Background

The appellant, Vidal, is an illegal alien from the Dominican Republic who has been residing in the United States under the assumed identity and identifiers of another individual -- Pedro Luis Rodríguez -- a United States citizen born in San Juan, Puerto Rico on September 3, 1964. In July 2002 Vidal applied for a U.S. passport application under the name "Pedro Luis Rodríguez," listing that individual's social security number and other personal identifiers in the application, but appending a photograph of himself. Vidal was issued a U.S. passport carrying the name "Pedro Luis Rodríguez," bearing Vidal's photograph.

Around this time Vidal was being investigated by the Commonwealth of Massachusetts for unrelated state drug offenses for which he was ultimately charged, convicted and, in 2005, sentenced

-3-

to a four-year and one-day term of imprisonment. Upon Vidal's arrest and fingerprinting in connection with the drug offense investigation, authorities discovered Vidal's true identity and destroyed the fraudulent U.S. passport he had obtained under his assumed name. Nevertheless, Vidal was not notified that his true identity had been discovered nor was he charged with any identify theft or fraud-related crime at that time. The Commonwealth charged him and incarcerated him for the drug offense in a Massachusetts correctional facility under the name Pedro Luis Rodríguez.

Around January 2006, while still incarcerated in Massachusetts on the state drug offenses, Vidal wrote a letter to the Department of Health and Demographic Registry in Puerto Rico, representing himself to be a U.S. citizen and requesting a birth certificate in the name "Pedro Luis Rodríguez," listing that individual's social security and date of birth. Vidal later asked another person, Gloria Frías, to mail the letter for him, and to attach to it a photocopy Vidal retained of the fraudulent U.S. passport he had previously obtained. Frías complied with Vidal's request.

On June 1, 2006, Vidal was interviewed in prison by agents from the Department of Diplomatic Security. At first, Vidal told agents that he was Pedro Luis Rodríguez of Puerto Rico. He ultimately admitted to being a Dominican national by the name of

José Luis Vidal-Reyes, and to filing fraudulent passport applications under the name "Pedro Luis Rodríguez".

### B. The Original and Superseding Indictments

On December 6, 2006, a federal grand jury returned a four-count indictment (the "original indictment") charging Vidal with misrepresentation of a social security account number, in violation of 42 U.S.C. § 408(a)(7)(B) (Count One); false representation of U.S. citizenship in violation of 18 U.S.C. § 911 (Count Two); aggravated identity theft in violation of 18 U.S.C. § 1028A (Count Three); and false statements on a passport application, in violation of 18 U.S.C. § 1542 (Count Four). All the counts charged derived from the events that took place on or about July 2002 when Vidal first submitted a U.S. passport application under his assumed name and social security number.

On April 13, 2007, Vidal moved to dismiss the aggravated identity theft count charged in the original indictment, on the ground that the aggravated identity theft statute, 18 U.S.C. § 1028A, was not enacted until 2004, and thus, its application to Vidal's 2002 conduct violated the Ex Post Facto Clause of the U.S. Constitution. Recognizing its error, the government then superseded the original indictment. In the superseding indictment, the government changed the factual basis for the aggravated identity theft charge, renumbered as Count Four, to offense conduct that took place in 2006. Specifically, the § 1028A count was

-5-

amended so as to be based on Vidal's use of false information to obtain a copy of a United States birth certificate in the name "Pedro Luis Rodríguez," which Vidal had requested from Puerto Rican authorities in 2006, while he was incarcerated. Notably, the alteration of the offense conduct time frame for the aggravated identity theft count, from events that occurred in 2002 to events that occurred in 2006, was the only change made to the original indictment by the superseding indictment. The factual basis for the additional counts remained Vidal's conduct in July 2002 and no new charges based on conduct occurring in 2006 were brought.[1] Vidal ultimately pled guilty to all four counts charged.

### C. Sentencing

In its PSR, the Probation Office calculated Vidal's Guidelines sentencing range ("GSR") to be 15 to 21 months on Counts One through Three (based on a total offense level of 12 and a criminal history category of 3). The PSR further stated that, for Count Four, a "consecutive term of 2 years is mandated by statute."

Vidal submitted objections to the PSR and filed a sentencing memorandum with the district court. A sentencing hearing was held on November 7, 2007. In his submissions and at

---

[1] Thus, as amended, the superseding indictment charged defendant with the 2002 misrepresentation of a social security number, 42 U.S.C. § 408(a)(7)(B) (Count One), false representation of U.S. citizenship in 2002, 18 U.S.C. § 911 (Count Two), false statements in the 2002 passport application, 18 U.S.C. § 1542 (Count Three), and aggravated identity theft in 2006, 18 U.S.C. § 1028A (Count Four).

the hearing, Vidal did not challenge the probation officer's calculation of the GSR, but instead requested a below-GSR sentence of one day on Counts One, Two and Three, followed by the mandatory two-year term on Count Four. Vidal's position was that this total sentence of two-years and one day would be, under 18 U.S.C. § 3553 (a), "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]."

Vidal argued that the substantial variance from the GSR he requested on Counts One through Three was justified because a GSR sentence (15 to 21 months) would be "excessive" when combined with the consecutive mandatory two-year sentence to be imposed on Count Four. This was especially true when compared to the types of sentences that persons who traffic in false documents, rather than mere end-users like Vidal, usually receive. Vidal further argued that a variance was justified in order to take into account such factors as the delays in the case (including the government's charging error) that precluded him from serving a greater portion of his federal sentence concurrently with his state sentence and the fact that after completing his sentence Vidal would likely be held in immigration detention for a substantial period awaiting deportation.

The government recommended a fifteen-month sentence on Counts One, Two and Three -- the bottom of the applicable GSR -- to run consecutively with the two-year term mandated by statute for

-7-

Count Four. In response to Vidal's request that the district court downwardly vary from the GSR and impose only a one-day sentence on Counts One through Three in order to make the total sentence reasonable, the government argued that doing so would be impermissible based on the language of the aggravated identity theft statute.[2] Specifically, the government took the position that the statute, at § 1028A(b)(3), prohibited the court from "tak[ing] into account" the two-year statutory minimum for aggravated identity theft when sentencing a defendant for other counts of conviction. See 18 U.S.C. § 1028A(b)(3) (quoted infra at section II.C.). Moreover, the government argued that the statute, at § 1028A(b)(2), prohibited running any part of the two-year mandatory sentence concurrently with any other sentence, and that doing as Vidal proposed would be an "end run around the language of the statute."

Vidal responded that § 1028A(b)(3)'s prohibition on considering the mandatory two-year term when sentencing a defendant on other counts, by its terms, only applied where those other

---

[2]  18 U.S.C. § 1028A, in relevant part, states:

> (a) Offenses
> (1) In general – Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

counts were predicate felonies underlying the aggravated identity theft conviction. In this case, Vidal maintained, because the 2006 conduct underlying his aggravated identity theft count was never charged, § 1028A(b)(3) did not apply.[3] Thus, according to Vidal, the court was free to take the two-year mandatory sentence for Count Four into account in sentencing Vidal on the non-predicate counts.

The court adopted the government's recommendation and sentenced Vidal to a term of 15 months on Counts One through Three, followed consecutively by a two-year term on Count Four. Though the court expressed a desire to impose a lower sentence, it thought itself precluded from doing so. It explained its reasoning as follows:

> I am going to sentence you to the recommendation that has been made by the government in this case. And I want you to understand, for defense counsel's purposes, I don't feel I have the authority to adopt your recommendation. So if I had the authority, I thought I had the authority, I would conclude that a two-year sentence as a cumulative effect would be the appropriate sentence here. Not too much, not too little but just right. But I don't believe I can do what you have asked me to do. So having said it that way, you have got an appealable issue I think and whatever happens happens. But that is -- I think the government's advice to me on this

---

[3] Vidal further argued that, whatever the effect of § 1028A, the court must take into account his arguments for downward variance from the GSR in determining the appropriate sentence on Counts One through Three.

> issue is the correct advice and that is why I am following the recommendation.

Vidal filed a timely notice of appeal.

## II.  Discussion

In this sentencing appeal defendant argues that the district count erred for two reasons, either of which justify remand for resentencing: (1) that the district court erred as a matter of law in holding that it could not take into account the mandatory sentence imposed under 18 U.S.C. § 1028A in assigning a sentence for Vidal's other non-predicate offenses; and (2) that, whatever the effect of § 1028A, the district court erred in failing to grant a downward variance from the GSR on the non-1028A offenses.  Because we accept Vidal's first argument and vacate and remand for resentencing on that ground, we need not reach Vidal's second claim regarding the reasonableness of his 15-month sentence for the non-1028A offenses.  See United States v. Rodríguez, 527 F.3d 221, 231 (1st Cir. 2008) (reasoning that because court vacated defendant's sentence and remanded for resentencing, it need not reach defendant's alternative argument, which challenged the substantive reasonableness of sentence); United States v. Reccko, 151 F.3d 29, 34 n.3 (1st Cir. 1998) (concluding that because remand for resentencing was already required based on finding of one sentencing error, court need not address defendant's alternative claim of sentencing error).

### A. Standard of Review

This court reviews <u>de novo</u> questions of statutory interpretation that bear on sentencing. <u>United States</u> v. <u>Jaca-Nazario</u>, 521 F.3d 50, 56 (1st Cir. 2008). As the effect of 18 U.S.C. § 1028A upon a district court's sentencing discretion "is purely a question of statutory interpretation . . . the [district] court's answer to it engenders de novo review." <u>See</u> <u>United States</u> v. <u>Caraballo</u>, 552 F.3d 6, 9 (1st Cir. 2008).

### B. Mandatory Sentence as Grounds for Variance

Before assessing the extent to which 18 U.S.C. § 1028A altered the district court's authority to consider the effect of a mandatory sentence as grounds to vary downwardly from the guidelines on other counts of conviction, we will begin by noting the extent of that authority absent statutory intervention.

Vidal cites <u>United States</u> v. <u>Webster</u> for his proposition that a sentencing court's discretion to take a mandatory sentence into account is "long-acknowledged in the law of this Circuit and reinforced by recent Supreme Court sentencing jurisprudence." <u>See</u> 54 F.3d 1 (1st Cir. 1995). In <u>Webster</u> we concluded that:

> [I]n departing from a guideline sentence the district court is free to exercise its own judgment as to the pertinence, if any, of a related mandatory consecutive sentence. Should the district court think that the latter has some role along with other factors in fixing the extent of a guideline departure in a particular case, that is within its authority; and should that court decline to consider the mandatory minimum in fixing the other

-11-

> sentence, that too is within its authority. For this court to decide upon the ingredients of a departure one by one would go very far toward defeating discretion.

Id. at 4. However "long-acknowledged" such discretion may be, it is clear that such discretion exists following the fundamental revival of discretion in sentencing accomplished by the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005) and its progeny. See United States v. Taylor, 532 F.3d 68, 69 (1st Cir. 2008) (noting that the Supreme Court's decisions in Gall v. United States, 128 S. Ct. 586 (2007), Kimbrough v. United States, 128 S. Ct. 558 (2007), and Rita v. United States, 551 U.S. 338 (2007), "make[] clear that in the post-Booker world, district judges are empowered with considerable discretion in sentencing"). After Booker, the applicable guidelines range is treated merely as advisory and the sentencing court is free to exercise its discretion to impose a reasonable sentence outside the guidelines range that is "sufficient, but not greater than necessary" based on the factors articulated in § 3553(a). See Rodríguez, 527 F.3d at 227-38 (describing § 3553(a) as a "tapestry of factors, through which runs the thread of an overarching . . . parsimony principle" that "instructs district courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing" (internal quotation marks & citation omitted)). Thus, to the extent that a mandatory term of imprisonment reasonably

-12-

bears on those relevant factors,[4] it remains, absent legislation to the contrary, within the sentencing court's discretion to take it into account.  See Rodríguez, 527 F.3d at 230 ("[A]bsent an unambiguous congressional directive barring sentencing courts from considering [a particular factor], a sentencing court can include that datum in its sentencing calculus, as long as the court grounds its rationale in the complex of factors enumerated in 18 U.S.C. § 3553(a)").  The issue then, is whether the language of 18 U.S.C. § 1028A curtails that discretion.

### C.  Effect of 18 U.S.C. § 1028A

The federal aggravated identity theft statute, 18 U.S.C. § 1028A, imposes a mandatory two-year term of imprisonment.  18 U.S.C. § 1028A(a)(1).  That mandatory term is to be added to the sentence imposed for "any felony violation enumerated in subsection (c)" of the statute, if, "during and in relation to" that felony, the perpetrator "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."  Id.  Among the felonies enumerated in the relevant subsection are

---

[4]  The effect of a mandatory consecutive sentence certainly bears upon the § 3553(a) factors to a certain extent.  Most obviously, the total amount of time a defendant will spend incarcerated due to the effect of a mandatory consecutive sentence inherently implicates the goal of incapacitation, i.e. "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2); see also United States v. Franklin, 499 F.3d 578, 587 (6th Cir. 2007) (Moore, J. concurring) ("The § 3553(a) factors require the district court to give at least some consideration to the total amount of time that a defendant will spend in prison.").

-13-

those that violate 18 U.S.C. § 911, relating to false personation of U.S. citizenship, and 42 U.S.C. § 408, relating to misrepresentation of a social security number. 18 U.S.C. § 1028 A(c)(2) & (11).

In addition to imposing a mandatory two-year sentence for violations of the statute, 18 U.S.C. § 1028A contains several provisions dictating how that sentence must be imposed. Two of these are central to the issues before us in this appeal. First, section (b)(2) requires that:

> [N]o term of imprisonment imposed on a person under [it] shall run concurrently with any other term of imprisonment imposed on the person under any other provision of law.

18 U.S.C. § 1028A(b)(2) (emphasis added).[5] Second, section (b)(3) provides that:

> [I]n determining any term of imprisonment to be imposed for the felony during which the means of identification was transferred, possessed or used, a court shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section.

18 U.S.C. § 1028A(b)(3) (emphasis added).

---

[5]  We note that "[t]he only exception to this statutorily mandated rule [requiring that all other sentences run consecutively to a sentence under § 1028A] grants a district court discretion to run additional § 1028A sentences imposed at the same time concurrently with each other." United States v. Lee, 545 F.3d 678, 680 (8th Cir. 2008) (citing 18 U.S.C. § 1028A(b)(4))(emphasis added).

As shown above, the language of the statute, at § 1028A(b)(3), clearly prohibits a sentencing court from taking into consideration § 1028A(a)(1)'s mandatory two-year term for aggravated identity theft to reduce the sentence that it would otherwise impose when sentencing a defendant for predicate offenses underlying the aggravated identity theft conviction, i.e. "the felony during which the means of identification was transferred, possessed or used." Id.; see also United States v. Omole, 523 F.3d 691, 699 (7th Cir. 2007) (holding that had the sentencing judge "even slightly factored" § 1028A's mandatory two-year sentence into his decision to lean toward a lighter sentence on predicate wire fraud counts "he would have violated 18 U.S.C. § 1028A(b)(3)"). It is undisputed, however, that in this case the court never had occasion to impose a sentence for any "felony during which the means of identification was transferred," because the 2006 predicate offenses underlying Vidal's aggravated identity theft conviction were never charged.[6] Rather, all counts charged, with the exception of Count Four, related to Vidal's 2002 conduct.

---

[6]  While no one disputes that Counts One through Three were not predicates for Vidal's § 1028A Count, this may be somewhat obfuscated on these facts, as the "unrelated" counts would actually be predicate offenses if not for the temporal disparity between their commission and the commission of the aggravated identity theft charged. Nevertheless, the indictment is abundantly clear that the offenses underlying the § 1028A count are offenses that took place in 2006, while other counts are based on conduct that took place in 2002.  Thus, the latter cannot be predicates for the former.

Thus, the question raised in this appeal, which is one of first impression, is whether § 1028A similarly curbs the sentencing court's discretion to take the two-year mandatory sentence for aggravated identity theft into account in sentencing a defendant for other <u>non-predicate</u> counts of conviction charged in the same indictment.

In interpreting the meaning of the statute, our analysis begins with the statute's text. <u>United States</u> v. <u>Godin</u>, 534 F.3d 51, 56 (1st Cir. 2008) ("Our interpretive task begins with the statute's text"); <u>see also</u> <u>Carcieri</u> v. <u>Salazar</u>, 129 S. Ct. 1058, 1063 (2009). "If the meaning of the text is unambiguous our task ends there as well." <u>Godin</u>, 534 F.3d at 56; <u>see also</u> <u>Carcieri</u>, 129 S. Ct. at 1063-64 (noting the "settled principle[]" that where "the statutory text is plain and unambiguous" the court "must apply the statute according to its terms"). "If the statute is ambiguous, we look beyond the text to the legislative history in order to determine congressional intent." <u>Godin</u>, 534 F.3d at 56. "'A statute is ambiguous only if it admits of more than one reasonable interpretation.'" <u>Id.</u> (quoting <u>Gen. Motors Corp.</u> v. <u>Darling's</u>, 444 F.3d 98, 108 (1st Cir. 2006)).

Vidal argues that the unambiguous text of 18 U.S.C. § 1028A(b)(3) only bars a court from taking into account the mandatory two-year sentence for aggravated identity theft to reduce the sentence "for the felony during which the means of

-16-

identification was transferred, possessed or used," i.e. for predicate felonies only. Nothing in the statute, however, says that district courts may not take the mandatory two-year sentence into account when sentencing for non-predicate offenses. According to Vidal, absent an express prohibition in the text of the statute, courts retain their authority to take the mandatory term into account. We agree.

The government asks us to look beyond the express language of 18 U.S.C. § 1028A(b)(3) to other indicators of congressional intent which, it argues, necessitate a contrary interpretation of the statute. Because we find that the "the plain language of the statute unambiguously reveals its meaning, and the revealed meaning is not eccentric," we "need not consult other aids to statutory construction." United States v. Meade, 175 F.3d 215, 219 (1st Cir. 1999); see also Carcieri, 129 S. Ct. at 1065 (overturning an interpretation of a term in the Indian Reorganization Act ("IRA") as contrary to the plain language of that statute). Our inquiry could stop here, as Vidal argues it should. Nevertheless, "[f]rom time to time . . . courts (perhaps manifesting a certain institutional insecurity) employ . . . secondary sources as a means of confirmation." Meade, 175 F.3d at 219 (collecting sources). In an abundance of caution, we follow suit.

The government first argues that evidence of congressional intent gleaned from other provisions in the statute and the statute's legislative history compel the conclusion that Congress intended district courts to first independently determine a reasonable sentence for all other charged offenses, without regard to the mandatory sentence for aggravated identity theft, and then add the mandatory two-year sentence to the total. The government principally relies on § 1028A(b)(2), which prohibits the sentence for aggravated identity theft to run concurrently "with any other term of imprisonment imposed on the person under <u>any other provision of law</u>." 18 U.S.C. § 1028A(b)(2) (emphasis added). This provision, the government argues, evinces clear congressional intent that the penalty for aggravated identity theft be consecutive to any other sentence imposed. According to the government, to reduce any other sentence so as to lessen the impact of the mandatory minimum would be to undercut the clear mandate of § 1028A(b)(2).

To further support its construction of 18 U.S.C. § 1028A(b)(2) as barring the reduction of <u>any</u> other sentence to compensate for the mandatory minimum, the government relies on precedent interpreting similar language in 18 U.S.C. § 924(c), a statute on which, it argues, § 1028A was modeled.[7] That statute

---

[7] 18 U.S.C. § 924(c) imposes an additional prescribed term of imprisonment, over and above that imposed on the underlying offense, upon a defendant who "during and in relation to any crime

-18-

contains a provision stating that "no term of imprisonment imposed on a person under [it] shall run concurrently with any other term of imprisonment imposed on the person." 18 U.S.C. § 924(c)(1)(D)(ii). The government cites United States v. Roberson, 474 F.3d 432 (7th Cir. 2007), for the proposition that courts construing language in the § 924(c) context, which parallels § 1028A(b)(2), have interpreted such language to mean that a district court may not undercut the impact of a mandatory consecutive sentence by reducing other portions of a defendant's sentence. See id., 474 F.3d at 436 (reasoning that "to use the presence of a section 924(c)(1) add-on to reduce the defendant's sentence for the underlying crime would be inconsistent with Congress's determination to fix a minimum sentence for using a firearm in a crime of violence").

We find the government's argument unpersuasive and the case law interpreting § 924(c) easily distinguishable. First, § 1028A and § 924(c) have significant differences. See Meade, 175 F.3d at 219 ("[P]recedent teaches that the case for construing one statute in a manner similar to another is weakest when the two have

_____

of violence or drug trafficking crime . . . uses or carries a firearm." 18 U.S.C. § 924(c)(1)(A). There is evidence that 924(c) influenced the drafting of § 1028A. See Identity Theft Investigation and Penalties: Hearing on H.R. 1731 Before the H. Subcomm. on Crime, Terrorism, and Homeland Security, 108th Cong. (2003), 2004 WL 576606 at *4 [hereinafter Hearings] (statement of Timothy Coleman, Counsel to the Assistant Attorney General) (noting that the structure of § 1028A's penalty scheme is modeled on the one used in 18 U.S.C. § 924(c)).

-19-

significant differences . . ."). Specifically, § 924(c) does not contain any provision that parallels § 1028A(b)(3), and thus no plain text bearing directly on the question of when the mandatory term can be taken into account by sentencing courts. Accordingly, courts analyzing § 924(c)(1)(D)(ii), that statute's consecutive sentence provision, were not required to reconcile their interpretations of that provision with another statutory provision expressly restricting sentencing courts from taking the mandatory sentence into account when imposing a sentence for predicate felonies only. In contrast, for us to read § 1028A(b)(2) as barring the consideration of the statute's mandatory sentence in imposing a sentencing on all other counts would essentially render § 1028A(b)(3) superfluous, as there would be no purpose in Congress further specifying therein that this restriction applies to predicate counts. See Carcieri, 129 S. Ct. at 1066 (stating that a court is "obliged to give effect, if possible, to every word Congress used" (citation omitted)); Alaska Dep't. of Envtl. Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004) (discussing the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant" (internal quotation marks & citation omitted)).

Second, those decisions reading into the language of § 924(c)(1)(D)(ii) a bar on considering the mandatory term in

-20-

sentencing on other counts of conviction have only applied such a prohibition to sentencing for predicates of the § 924(c) offense. See, e.g., Roberson, 474 F.3d at 436 (holding that § 924(c) mandatory sentence could not be taken into account to reduce sentence for predicate robbery in which firearm was used); Franklin, 499 F.3d at 586 (same). The government fails to cite, and we are not aware of, a § 924(c) case that has prohibited consideration of a mandatory sentence in the context of sentencing non-predicate offenses. Thus we would read the § 924(c) line of cases to support, at most, the presence of an implied sentencing limitation in § 924(c) that mirrors the express sentencing limitation in the text of § 1028A(b)(3), which applies to predicate offenses only.

Morever, the government relies heavily on the consecutive sentence requirement in § 1028A(b)(2) to support its claim that Congress intended a "real" mandatory sentence, not one that is watered down by reductions to sentences on accompanying counts of conviction. However, we are convinced that, to the extent that the presence of § 1028A(b)(2) in the text of the aggravated identity theft statute provides any indication of what Congress intended § 1028A(b)(3) to mean, it bolsters Vidal's interpretation. This conclusion comes by way of the expresio est exclusio alterius canon, a doctrine of statutory construction resting on a presumption that Congress acts carefully and deliberately in

-21-

including terms in one part of a statute and omitting them in another. See United States v. Councilman, 418 F.3d 67, 73 (1st Cir. 2005) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting Russello v. United States, 464 U.S. 16, 23 (1983)). Comparing the language of § 1028A(b)(2) with the language of § 1028A(b)(3) side-by-side, in § 1028A(b)(2) Congress specifically stated that § 1028A's mandatory term of imprisonment must run consecutively to "any other term of imprisonment" imposed "under any other provision of law." 18 U.S.C. § 1028A(b)(2) (emphasis added). In contrast, § 1028A(b)(3)'s bar on taking the mandatory sentence into account is only applied with respect to sentences "for the felony during which the means of identification was transferred, possessed, or used." 18 U.S.C. § 1028A(b)(3). The conspicuous inclusion of the "any other provision of law" language in § 1028A(b)(2), coupled with its omission in § 1028A(b)(3), further demonstrates that if Congress had intended to extend § 1028A(b)(3)'s restriction on district courts' sentencing discretion to sentencing for offenses under "any other provision of law," rather than for predicate felonies only, it would have explicitly said so.[8]

---

[8] See also Carcieri, 129 S. Ct. at 1066. In Carcieri the court cited language similar to that in Councilman to conclude that where Congress used the phrase "now or hereafter" in one part of the IRA

-22-

The government also relies on the legislative history of the aggravated identity theft statute to support its contention that Congress intended the mandatory sentence under § 1028A to apply "in addition to" the sentence for any other crime, predicate or not. According to the House Report, § 1028A was enacted to address Congress's concern that identity thieves under prior law would often receive short prison sentences or be sentenced to probation and afterwards "go on to use false identities to commit much more serious crimes." H.R. Rep. No. 108-528, at 3 (2004), reprinted in 2004 U.S.C.C.A.N. 779, 780. Thus, the provisions in § 1028A(b) were enacted to "ensure the intent of this legislation [was] carried out." Id. at 10, 2004 U.S.C.C.A.N. at 786; see also Godin, 534 F.3d at 62 (Lynch, C.J., concurring) (explaining that the language of § 1028A "shows how serious Congress was about increasing the mandatory sentence" because it "expressly cuts off most of the mechanisms through which such a sentence could be reduced").

Nevertheless, the legislative history cited by the government only shows that Congress, in passing § 1028A, intended

but only "now" in the challenged provision (§ 479), the use of the word "now" in § 479, without the accompanying phrase "or hereafter," provided further textual support to the court's conclusion that § 479 refers solely to events contemporaneous with the Act's enactment. Id. It reasoned that "the statutory context makes clear that 'now' does not mean 'now or hereafter'" and that "[h]ad Congress intended to legislate [a contrary definition], it could have done so explicitly, as it did in [the other provisions], or it could have omitted the word 'now' altogether." Id.

-23-

to enhance criminal penalties for identity theft. Our interpretation, however, is not inconsistent with that purpose. Congress could have reasonably chosen to enhance penalties for identity theft by creating a mandatory sentence for its commission, requiring that this mandatory sentence not be used to reduce the sentence for predicate offenses, but also making a reasoned judgment that this restriction on a sentencing court's discretion need not extend to sentencing for unrelated crimes. In fact, after examining the legislative history, we are convinced that this history supports Vidal's interpretation of the statute by demonstrating Congress's particular concern about identity theft in the commission of <u>predicate felonies</u>. For example, in testimony before the House Judiciary Committee, counsel to the Assistant Attorney General explained:

> [I]dentity theft . . . is an entirely derivative offense, in that it is virtually always committed in connection with some other crime. The Sentencing Guidelines, however, are generally designed and intended to be . . . charge-neutral: . . . in other words, the sentence depends on the underlying . . . relevant conduct . . . and not on the particular offense charged in the indictment. Thus, the Guidelines will generally ignore the fact that two offenses have been charged (a derivative offense and a predicate offense); the same sentence would be imposed in such a case as would be imposed even if only the predicate offense had been charged. Consequently, application of the Guidelines would mean that there would be virtually no practical advantage to charging the derivative criminal offense. Prosecutors would have to

-24-

> charge more facts, and prove more facts, without obtaining any additional punishment. H.R. 1731 avoids this problem through the structure of its penalty scheme . . . Accordingly, H.R. 1731 provides that, if a person commits aggravated identity theft by stealing someone's identity <u>in order to commit a serious federal predicate offense</u>, that person will be sentenced to an additional two years imprisonment over and above the sentence for the underlying offense.

<u>Hearings</u>, <u>supra</u> n.6 at *4-5 (statement of Timothy Coleman, Counsel to the Assistant Attorney General) (emphasis added); <u>see</u> <u>id.</u> (noting that "virtually all of the most serious forms of identity theft involve predicate criminal activity"); <u>see also</u> H.R. Rep. No. 108-528, at 10, 2004 U.S.C.C.A.N. at 785 (explaining that the bill amends Title 18 so as to provide for a "mandatory consecutive penalty enhancement of 2 years for any individual who knowingly transfers . . . the means of identification of another person in order to commit a serious Federal <u>predicate</u> offense" (emphasis added)); <u>id.</u> (explaining that "[t]his 2-year enhancement is in addition to any term of imprisonment for the <u>underlying</u> offense." (emphasis added)). This testimony reveals that a major concern of § 1028A(b)(3)'s drafters was to ensure, by making the sentences truly cumulative, that prosecutors had an incentive to charge both the aggravated identity theft violation and the underlying predicate felony or felonies. While we reiterate that we are not required to consider these policy concerns, given that we find that the statute "speaks for itself," <u>Carcieri</u>, 129 S. Ct. at 1066, we

-25-

nevertheless note that under our reading of the statute, the government certainly retains the incentive to charge underlying felonies, and it is as a result of its unexplained failure to do so that the present appeal arose.[9] This concern with charging incentives, however, is not implicated where other counts charged in the same indictment are unrelated offenses, for which the incentive to separately charge already exists. Therefore, while our holding ultimately rests on the plain text of the statute rather than its legislative history, we nevertheless find it telling that the legislative history of § 1028A is consistent with its text. Specifically, the legislative history demonstrates that the express distinction drawn by Congress between predicate and non-predicate offenses in the plain text of § 1028A(b)(3) was likely no accident, but rather, an intentional act grounded in a logical basis.

---

[9] These facts raise the question of whether the government may permissibly charge aggravated identity theft under § 1028A without also charging a predicate felony. Our sister circuits have held in the context of 18 U.S.C. § 924(c) that that statute "does not require that a defendant be convicted of, or even charged with, the predicate offense to be found guilty of using or carrying a firearm in relation to the predicate offense." See, e.g., United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005). However, we find no precedent on this issue in the § 1028A context. Given the parallel language of these two statutes (for text of § 924(c), see supra n.7) we will assume, without deciding, that § 1028A is subject to a comparable interpretation. Nevertheless, because Vidal does not challenge the government's failure to charge the predicate felonies in this case, we see no reason to decide this question sua sponte.

In its final contention, the government argues that Vidal's reading of § 1028A runs contrary to the Sentencing Guidelines, which, in the section governing sentencing on multiple counts of conviction, state that where a defendant is convicted of an offense subject to a mandatory consecutive sentence, that portion of the sentence "shall be determined by that statute and imposed independently."  U.S.S.G. § 5G1.2(a) (emphasis added).[10] The government interprets the word "independently" as requiring a district court to arrive at the appropriate sentence for other counts of conviction without taking into consideration the mandatory sentence for the counts subject to it.  Vidal counters that the provision does not support the government's argument because it merely states that the mandatory minimum should be determined "separately" from the GSR on other counts; not that the ultimate sentence imposed on other counts cannot take the mandatory minimum into consideration.  We agree.

A better reading of this provision -- one that is supported by case law -- would be that in requiring that a mandatory consecutive sentence be determined "independently," this provision merely specifies that the sentence for counts subject to a mandatory consecutive sentence should be calculated separately

---

[10]  U.S.S.G. § 5G1.2(a) states, that "the sentence to be imposed on a count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment, shall be determined by that statute and imposed independently."

from the GSR on other counts. In other words, those counts involving mandatory sentences should be excluded from the grouping procedures that would otherwise apply under the guidelines to compute a GSR for multiple counts of conviction. See, e.g., United States v. A.B., 529 F.3d 1275, 1276 n.1 (10th Cir. 2008). Vidal, however, does not contend that the aggravated identity theft count ought to have been grouped with his other counts of conviction to determine his GSR. Rather, he argues that after separately computing the GSR for Counts One through Three, the court had the authority to take the mandatory term for Count Four into account in choosing to downwardly vary from the GSR when determining a sentence for the other Counts. This guideline provision, which, in any event is merely advisory after Booker, does not detract from his position.

### III. Conclusion

We thus conclude that a district court, in sentencing a defendant on a 18 U.S.C. § 1028A aggravated identity theft conviction, is not precluded from taking § 1028A's mandatory sentence into account in sentencing a defendant on other counts of conviction charged in the same indictment that are not predicate felonies underlying the § 1028A conviction. We find that this interpretation is the only one consistent with the text of the statute as written, and thus, the only one to which a criminal defendant ought fairly be submitted. Because the sentencing court

-28-

erroneously concluded that it lacked the authority to credit Vidal's proposal to do exactly this, we vacate and remand for re-sentencing.  See United States v. Rivera, 994 F.2d 942, 953 (1st Cir. 1993) (citing United States v. Castiello, 915 F.2d 1, 5-6 (1st Cir. 1990) for the proposition that a "new proceeding [is] needed where [the] district court wrongly thought it lacked legal power to depart [from sentencing guidelines], but not where it simply chose not to exercise this authority").

**Reversed** and **Remanded**.