# United States Court of Appeals
## For the First Circuit

No. 10-1886

RECOVERY GROUP, INC., ET AL.,

Petitioners, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent, Appellee.

---

APPEAL FROM THE JUDGMENT OF THE
UNITED STATES TAX COURT

---

Before

Torruella, Circuit Judge,
Souter,[*] Associate Justice,
and Boudin, Circuit Judge.

---

Peter L. Banis, with whom Banis, O'Sullivan & McMahon, LLP, was on brief for petitioners.
Damon W. Taaffe, Attorney, Tax Division, Department of Justice, with whom John A. DiCicco, Acting Assistant Attorney General, and Thomas J. Clark, Attorney, were on brief for respondent.

---

July 26, 2011

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**TORRUELLA**, **Circuit Judge**. The present appeal requires us to determine whether a covenant not to compete, entered into in connection with the acquisition of a portion of the stock of a corporation that is engaged in a trade or business, is considered a "section 197 intangible," within the meaning of I.R.C. § 197(d)(1)(E), regardless of whether the portion of stock acquired constitutes at least a "substantial portion" of such corporation's total stock. For the reasons stated below, we answer in the affirmative.

Petitioners-Appellants Recovery Group, Inc. ("Recovery Group") and thirteen individuals who held shares in said corporation appeal the United States Tax Court's decision in Recovery Group, Inc. v. Comm'r of Internal Revenue, T.C. Memo 2010-76, 99 T.C.M. (CCH) 1324 (U.S. Tax Ct. Apr. 15, 2010), which found in favor of respondent Commissioner of Internal Revenue (the "Commissioner") concerning the correctness of certain income tax deficiencies assessed by the United States Internal Revenue Service (the "IRS") against the appellants.[1] These deficiencies resulted from the finding that a certain covenant not to compete -- entered into by Recovery Group in connection with the redemption of 23% of the shares of a former shareholder -- constituted a "section 197 intangible," and, consequently, that Recovery Group had to amortize

---

[1] The tax court, however, ruled against respondent Commissioner of Internal Revenue regarding the application of certain accuracy-related penalties. The Commissioner did not appeal this ruling.

the payments it made under such covenant not to compete over the fifteen-year period prescribed by I.R.C. § 197(a), and not over the duration of the covenant, as Recovery Group had reported in its corresponding income tax returns. Because we find that the aforementioned covenant not to compete was an "amortizable section 197 intangible," we affirm.

## I. Facts and Procedural History

The relevant facts in this appeal are not in dispute. During the tax years in question, Recovery Group was an "S corporation"[2] that engaged in the business of providing consulting and management services to insolvent companies.

In 2002, James Edgerly -- one of Recovery Group's founders, employees and minority shareholders -- informed its president that he wished to leave the company and to have the company buy out his shares, which represented 23% of Recovery Group's outstanding stock. As a result of the subsequent negotiations, Mr. Edgerly entered into a buyout agreement whereby Recovery Group agreed to redeem all of Mr. Edgerly's shares for a price of $255,908. In addition, Mr. Edgerly entered into a "noncompetition and nonsolicitation agreement" that prohibited Mr. Edgerly from, inter alia, engaging in competitive activities from

---

[2] Subchapter S of the Internal Revenue Code, I.R.C. §§ 1361 et seq., permits small business corporations meeting the criteria set forth in the statute to elect to be taxed as "pass through" entities in a manner similar to partnerships, rather than corporations. 26 U.S.C. § 1362(a).

July 31, 2002 through July 31, 2003. The amount paid by Recovery Group to Mr. Edgerly for this covenant not to compete (the "Covenant") amounted to $400,000, which was comparable to Mr. Edgerly's annual earnings.

In its corresponding income tax returns, Recovery Group claimed deductions for its payments under the Covenant by amortizing such payments over the twelve-month duration of the Covenant. Thus, because that twelve-month term straddled the two tax years 2002 and 2003, Recovery Group allocated the $400,000 over those two years.

After a subsequent investigation, the IRS determined that the Covenant was an amortizable section 197 intangible, amortizable by Recovery Group over fifteen years (beginning with the month of acquisition) and not over the duration of the Covenant, as had been reported by Recovery Group in its corresponding income tax returns. Consequently, the IRS partially disallowed Recovery Group's deductions for the cost of the Covenant, allowing amortization deductions of only $11,111 for 2002 and $26,667 for 2003, and disallowing $155,552 for 2002 and $206,667 for 2003. This disallowance increased Recovery Group's net income for each year, and thus each shareholder's share of Recovery Group's income.

Accordingly, the IRS issued notices of deficiency to both Recovery Group and its shareholders.[3]

Recovery Group and its shareholders filed timely petitions in the tax court, alleging that the Covenant was not considered a "section 197 intangible," and, consequently, that it was not subject to I.R.C. § 197's fifteen-year amortization period, but rather that it was amortizable over its one-year duration. Specifically, Recovery Group alleged that, in order for a covenant not to compete to be considered a "section 197 intangible" under I.R.C. § 197(d)(1)(E), the covenant must be entered into in connection with the acquisition of either the totality of such corporation's stock or a substantial portion of such corporation's total stock. The tax court rejected Recovery Group's interpretation of I.R.C. § 197 and found in favor of the Commissioner, concluding that § 197(d)(1)(E)'s substantiality requirement only applied to asset acquisitions and not to stock acquisitions, and, consequently, that a covenant not to compete entered into in connection with the acquisition of any corporate

---

[3] If an eligible corporation makes an election under I.R.C. § 1362(a) to be treated as an "S corporation" for income tax purposes, as Recovery Group did for the tax years here in question, the corporation's income is generally not taxed at the corporate level, but rather is passed through (and taxed) to its shareholders. As an exception to this rule, however, an S corporation itself is liable for tax under I.R.C. § 1374(a) on its "net recognized built-in gain," if any. In the instant case, the IRS's disallowance of the deductions claimed by Recovery Group gave rise to such a gain. Thus, the IRS also issued a notice of deficiency to Recovery Group.

stock, even if not "substantial," was considered a "section 197 intangible" amortizable over fifteen years. The tax court also opined, in the alternative, that even if the aforementioned conclusion was incorrect and I.R.C. § 197(d)(1)(E)'s substantiality requirement indeed applied to stock acquisitions, Recovery Group's claim nonetheless failed because the court found the stock redemption in question (23% of Recovery Group's total stock) to be a "substantial portion" of the company's stock. This appeal ensued.[4]

## II. <u>Standard of Review</u>

We review de novo the tax court's legal conclusions, including its interpretation of the Internal Revenue Code. <u>Drake v. Comm'r</u>, 511 F.3d 65, 68 (1st Cir. 2007).

## III. <u>Discussion</u>

On appeal, Recovery Group contests the tax court's decision on the tax deficiencies by challenging the court's interpretation of I.R.C. § 197.[5] Specifically, Recovery Group avers that the tax court erred by concluding that the Covenant is a "section 197 intangible" within the meaning of I.R.C. § 197(d)(1)(E).

---

[4] We have jurisdiction to hear this appeal, pursuant to I.R.C. § 7482.

[5] All appellants, including Recovery Group, join in raising the same arguments on appeal.

In interpreting the meaning of I.R.C. § 197(d)(1)(E), we begin our analysis with the statutory text and determine whether the same is plain and unambiguous. See Carcieri v. Salazar, 555 U.S. 379, 129 S.Ct. 1058, 1063 (2009). In so doing, we accord the statutory text "its ordinary meaning by reference to the 'specific context in which that language is used, and the broader context of the statute as a whole.'" Mullane v. Chambers, 333 F.3d 322, 330 (1st Cir. 2003) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)). If the statutory language is plain and unambiguous, we "must apply the statute according to its terms," Carcieri, 129 S.Ct. at 1063-64, except in unusual cases where, for example, doing so would bring about absurd results. See In re Hill, 562 F.3d 29, 32 (1st Cir. 2009). "If the statute is ambiguous, we look beyond the text to the legislative history in order to determine congressional intent." United States v. Vidal-Reyes, 562 F.3d 43, 50-51 (1st Cir. 2009) (internal quotation marks omitted). "A statute is ambiguous only if it admits of more than one reasonable interpretation." Id. at 51 (internal quotation marks omitted).

We begin our discussion by providing a brief background of I.R.C. § 197 and then turn to sketching both the Commissioner's construction of I.R.C. § 197, which was adopted by the tax court as its primary holding, and Recovery Group's interpretation.

## A.  Background

Section 197 entitles taxpayers to claim "an amortization deduction with respect to any amortizable section 197 intangible." 26 U.S.C. § 197(a).  The cost of an "amortizable section 197 intangible" must be amortized "ratably over the 15-year period beginning with the month in which such intangible was acquired." Id.  No other depreciation or amortization deduction is allowed with respect to any "amortizable section 197 intangible." Id. at § 197(b).  On the other hand, intangible assets not classified as "amortizable section 197 intangible[s]" are not within the purview of I.R.C. § 197 and are not subject to this section's mandatory fifteen-year amortization period.  Rather, depreciation and amortization for such non-section 197 intangible assets may be allowed under the rules of other code provisions, such as I.R.C. § 167, provided the asset complies with the requirements set forth therein.

## B.  Relevant Statutory Language

Section 197(d)(1)(E) defines the term "section 197 intangible" as including, among other things, "any covenant not to compete . . . entered into in connection with an acquisition (directly or indirectly) of an interest in a trade or business or substantial portion thereof."  Recovery Group does not contest that, under I.R.C. § 197(d)(1)(E), a redemption of stock is considered an indirect acquisition of an interest in a trade or

business.  See Frontier Chevrolet Co. v. Comm'r, 329 F.3d 1131, 1132 (9th Cir. 2003).  Rather, the parties' dispute over the construction of this section deals primarily with the antecedent of the word "thereof" and the definition of "an interest."

The tax court held and the Commissioner asserts that the phrase "an interest in a trade or business" refers to a portion -- all or a part -- of an ownership interest in a trade or business, and that the phrase "trade or business" is the antecedent of the word "thereof."  Thus, the tax court essentially read I.R.C. § 197(d)(1)(E) as follows: "the term 'section 197 intangible' means . . . any covenant not to compete . . . entered into in connection with an acquisition . . . of [(1)] an interest in a trade or business or [(2)] [a] substantial portion [of a trade or business]."  It is noteworthy that, under this interpretation, the question of whether an acquisition is "substantial" arises only where the acquisition is "of a trade or business" (i.e., of assets constituting a trade or business), and not where the acquisition is of "an interest" (i.e., a stock or partnership ownership interest) in a trade or business.  In other words, under this reading, a covenant not to compete executed in connection with a stock acquisition of any size -- substantial or not -- would be considered a "section 197 intangible."  Meanwhile, in the context of asset acquisitions, a covenant not to compete would only be considered a "section 197 intangible" insofar as it is entered into

-9-

in connection with the acquisition of all or a substantial portion of assets constituting a trade or business.  Accordingly, the tax court held that "15-year amortization is required when a covenant is entered into in connection with an acquisition of either an interest (i.e., an entire or fractional stock interest) in a trade or business <u>or</u> assets constituting a substantial <u>portion of a trade or business</u>."  <u>Recovery Group, Inc.</u>, T.C. Memo 2010-76.

Recovery Group, on the other hand, argues that the words "<u>an</u> interest in a trade or business" refer to "<u>the entire</u> interest in a trade or business," and that the phrase "an interest in a trade or business" is the antecedent of the word "thereof." Accordingly, Recovery Group maintains that I.R.C. § 197(d)(1)(E) should be construed as follows:  "the term 'section 197 intangible' means . . . any covenant not to compete . . . entered into in connection with an acquisition . . . of [(1)] [<u>the entire</u>] interest in a trade or business or [(2)] [a] substantial portion [<u>of an interest in a trade or business</u>]."  Recovery Group further alleges that the phrase "an interest in a trade or business" should be read to include both assets constituting a trade or business and stock in a corporation that is engaged in a trade or business.[6]  Thus,

---

[6]  Recovery Group supports its interpretation -- that "interest in a trade or business" is the operative phrase working as the antecedent of the word "thereof" -- by citing a sentence in the legislative history that states as follows: "For [purposes of I.R.C. § 197], an interest in a trade or business includes not only the assets of a trade or business, but also stock in a corporation that is engaged in a trade or business or an interest in a

-10-

under this interpretation, section 197's fifteen-year amortization would apply to covenants issued in connection with a stock acquisition only insofar as the covenantee[7] acquires at least a "substantial portion" of stock in a corporation that is engaged in a trade or business.  In other words, under this reading of I.R.C. § 197(d)(1)(E), the question of whether an acquisition is "substantial" would arise both in stock and asset acquisitions.

As an initial matter, we note that Recovery Group's construction of I.R.C. § 197(d)(1)(E) makes a portion of the statutory language seem redundant, and thus fails to give effect to the entire statute.  See In re Baylis, 313 F.3d 9, 20 (1st Cir. 2002) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used." (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979))).  Specifically, if, as Recovery Group alleges, the textual definition of a section 197 intangible includes a covenant not to compete entered into in connection with, (1) the entire interest in a trade or business or (2) a substantial portion of an interest in a trade or business, then the first

---

partnership that is engaged in a trade or business." H.R. Rep. No. 103-111, at 764 (1993).  However, as discussed in the following section, a comprehensive analysis of the congressional concerns and purposes manifested in the legislative history of I.R.C. § 197 makes clear that Recovery Group's reading of the statute is incorrect.

[7]  A "covenantee" is the "person to whom a promise by covenant is made; one entitled to the benefit of a covenant."  Black's Law Dictionary 421 (9th ed. 2009).  In the present case, Recovery Group was the covenantee under the Covenant.

category may be considered redundant because any acquisition falling under "(1)" would presumably also satisfy the second category. Nevertheless, this weakness, by itself, is not sufficient in the present case to discard Recovery Group's interpretation as unreasonable or to dispel the ambiguity that otherwise arises from the statutory language. See Lamie v. United States Tr., 540 U.S. 526, 536 (2004) (noting that "[a court's] preference for avoiding surplusage constructions is not absolute"). Rather, we find that the relevant statutory language is ambiguous, as both the Commissioner's and Recovery Group's interpretations of the same are reasonable within the context of the statute.[8] Accordingly, we proceed to analyze the statute's legislative history in order to determine congressional intent. See Vidal-Reyes, 562 F.3d at 50-51.

## C. **Purpose and Legislative History**

Prior to the enactment of I.R.C. § 197, as part of the Revenue Reconciliation Act of 1993 (Pub. L. No. 103-66, 107 Stat. 312), taxpayers were not allowed an amortization deduction with respect to goodwill, but were allowed an amortization deduction for intangible assets that had limited useful lives that could be determined with reasonable accuracy. See Newark Morning Ledger Co. v. United States, 507 U.S. 546, 548 n.1 (1993) (citing 26 C.F.R.

---

[8] As counsel for the respondent-appellee understatedly conceded during oral arguments for this appeal, the statutory language here in question "is not a model of clarity."

-12-

§ 1.167(a)-3 (1992)).  As a result, taxpayers and the IRS engaged in voluminous litigation concerning the identification of amortizable intangible assets and their useful lives.[9]

The legislative history of I.R.C. § 197 identified the following three types of disputes arising between taxpayers and the IRS: "(1) whether an amortizable intangible asset exists; (2) in the case of an acquisition of a trade or business, the portion of the purchase price that is allocable to an amortizable intangible asset; and (3) the proper method and period for recovering the cost of an amortizable intangible asset."  H.R. Rep. No. 103-111, at 760 (1993).

The legislative history referred to the "severe backlog of cases in audit and litigation [as] a matter of great concern," and made explicitly clear that "[t]he purpose of [I.R.C. § 197] [was] to simplify the law regarding the amortization of intangibles."  Id. at 777.[10]  The Committee "believed that much of the controversy that [arose] under [pre-section-197] law with

_____

[9]  In 1993, the IRS estimated that $14.4 billion in proposed adjustments relating to intangible amortization cases were in various levels of the audit and litigation process.  Sheppard, IRS Official Discusses Settlement of Intangible Cases, Tax Analysts, Tax Notes Today, 93 TNT 204-1, October 4, 1993.

[10]  In the American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418, which extended the rules of I.R.C. § 197 to acquisitions of sports franchises, Congress had an opportunity to reiterate the purposes served by I.R.C. § 197.  Notably, the legislative history of this act referred to disputes over the amortizable life of intangible assets as "an unproductive use of economic resources."  H.R. Rep. No. 108-548, pt. 1 (2004).

-13-

respect to acquired intangible assets could be eliminated by specifying a single method and period for recovering the cost of most acquired intangible assets and by treating acquired goodwill and going concern value as amortizable intangible assets." Id. at 760. Accordingly, the bill required the cost of most acquired intangible assets, including goodwill and going concern value, to be amortized ratably over a fixed fifteen-year period. Id.[11] In reaching this simplified approach, the Committee recognized that certain acquired intangible assets -- to which I.R.C. § 197 applied -- would have useful lives that would not coincide with the fifteen-year amortization period prescribed by the statute. Id.

In the particular case of a covenant not to compete, Congress made I.R.C. § 197 applicable only where the covenant was entered into in connection with an acquisition of an interest in a trade or business or substantial portion thereof.[12] 26 U.S.C. § 197(d)(1)(E). This category was included in I.R.C. § 197 because of the immense volume of litigation regarding the value properly assignable to covenants not to compete. See generally Annette

_____

[11] Although this portion of the legislative history provided for a fourteen-year amortization period, the bill was later modified to reflect a fifteen-year amortization period. See H.R. Rep. No. 103-213 (1993).

[12] Other covenants not to compete are not governed by I.R.C. § 197 and may be amortized over their useful lives, provided they satisfy the requirements of I.R.C. § 167 and its regulations. See generally David L. Cameron & Thomas Kittle-kamp, Federal Income Taxation of Intellectual Properties & Intangible Assets ¶ 8.03[2][b], at 8 (RIA 2011).

-14-

Nellen, <u>BNA Tax Management Portfolio 533-3rd: Amortization of Intangibles</u> § III.B.10.

In the context of asset acquisitions, if I.R.C. § 197(d)(1)(E) had not been included, a buyer of assets constituting a trade or business would have had a significant tax-motivated incentive to allocate as covenant cost -- and amortize over the covenant's useful life -- what was in fact purchase price attributable to section 197 intangibles (such as goodwill and going concern), which are amortizable over a fifteen-year period pursuant to I.R.C. § 197.[13] This incentive would have inevitably given rise to much litigation, since the value of goodwill and going concern is notoriously difficult to determine, <u>see</u> <u>Sanders</u> v. <u>Jackson</u>, 209 F.3d 998, 1003 (7th Cir. 2000) (noting that "due to its transitory nature, goodwill is extremely difficult to quantify and value with any certainty"), thus allowing for much latitude and uncertainty in the allocation of amounts between the covenant and these intangibles. Section 197 attempts to eliminate this incentive and avoid litigation by applying to the covenant not to compete the same fifteen-year amortization period and rules applicable to

---

[13] This incentive would have been balanced only by the stock seller-covenantor's preference for allocating purchase price to the assets sold (instead of the covenant), because he presumably would receive capital gain treatment (generally taxed at preferential rates) for his gain on the sale of the assets and would receive ordinary gain treatment for the consideration received under the covenant. <u>See</u> <u>Muskat</u> v. <u>United States</u>, 554 F.3d 183, 188 (1st Cir. 2009).

section 197 intangibles (such as goodwill and going concern) transferred under the sale of the business, thereby making it less relevant for a buyer of a business whether a payment to the seller is classified as covenant consideration or goodwill purchase price. However, because goodwill and going concern are presumably only transferred where at least a substantial portion of assets constituting a trade or business is sold, the opportunity to classify as covenant consideration what is in fact goodwill purchase price is generally not present where a covenant is entered into in connection with the acquisition of less than a substantial portion of assets constituting a trade or business. This explains why, in the context of asset acquisitions, Congress made I.R.C. § 197(d)(1)(E) applicable only where the covenant not to compete was entered into in connection with the acquisition of at least a substantial portion of assets constituting a trade or business.

In the context of stock acquisitions, however, the uncertainty -- and consequently the possibility for much litigation between taxpayers and the IRS -- caused by the inherent difficulty in valuing goodwill and going concern is generally present even where the purchased stock does not constitute a substantial portion of the corporation's total stock. This is due to the fact that goodwill and going concern generally constitute an essential component of the value of each share of corporate stock, as each

-16-

share of stock reflects a proportionate allotment of the value of the corporation's goodwill and going concern. See, e.g., Home Sav. Bank v. City of Des Moines, 205 U.S. 503, 512 (1907) (noting that goodwill was an essential component of the value of the shares of a bank); Charter Wire, Inc. v. United States, 309 F.2d 878, 879 (7th Cir. 1962) ("The stock included the good will value of the enterprise."); Young v. Seaboard Corp., 360 F. Supp. 490, 497 (D. Utah 1973) (noting that the market value of the shares of a corporation "included the going concern and good will value of the corporation"). Accordingly, especially in the case of non-publicly held corporations,[14] the valuation of shares of corporate stock can become quite complex and uncertain. See Dugan v. Dugan, 457 A.2d 1, 6 (N.J. 1983) ("There are probably few assets whose valuation imposes as difficult, intricate and sophisticated a task as interests in close corporations. They cannot be realistically evaluated by a simplistic approach which is based solely on book value, which fails to deal with the realities of the good will concept . . . ."). As discussed below, concerns over the voluminous amount of litigation between taxpayers and the IRS, brought in part by this uncertainty in the valuation of corporate

---

[14] The valuation of shares in publicly traded corporations is not as complex as in non-publicly traded corporations, because, in the case of the former, one can determine their value based on the market price of the stock. See Dugan v. Dugan, 457 A.2d 1, 5 (N.J. 1983) (citing G. Catlett & N. Olson, Accounting for Goodwill 14 (1968)).

stock, directly influenced the solution crafted by Congress in I.R.C. § 197(d)(1)(E).

If I.R.C. § 197(d)(1)(E) had not applied to a covenant not to compete entered into in connection with the acquisition of a corporation's stock, a buyer of such stock would have had a very significant incentive to allocate to the cost of the covenant what was in fact stock purchase price, because the ostensible cost of the covenant would presumably be amortized and deducted over its usually short useful life, while amounts allocated to the stock's purchase price would not be deductible and would simply form part of the buyer's basis in the stock, presumably to be recovered only after the buyer subsequently disposed of such stock and a capital gain/loss was computed on such disposition. See generally, Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts ¶ 46.1 (RIA 2011). This powerful incentive for the stock buyer-covenantee to overstate the cost of the covenant and to understate the price of the stock, combined with the opportunity for massaging the numbers provided by the aforementioned uncertainty inherent in determining the value of the stock, would create fertile ground for substantial litigation between taxpayers and the IRS. Section 197 addresses this situation by decreasing the stock buyer-covenantee's tax-motivated incentive to overstate the cost of the covenant. Specifically, I.R.C. § 197 imposes a fifteen-year amortization period to covenants not to compete

entered into in connection with the acquisition of stock in a corporation that is engaged in a trade or business. H.R. Rep. No. 103-111, at 764 (1993). This rule reduces the tax benefit that a stock buyer-covenantee would presumably have otherwise derived from an overstatement of the covenant's cost (i.e., it precludes the taxpayer from amortizing and deducting the covenant over its usually short useful life).

In light of the foregoing, we now analyze the crux of this case: whether Congress intended I.R.C. § 197(d)(1)(E) to apply to any stock acquisition or only those stock acquisitions considered "substantial."

## D. Analysis

We disagree with Recovery Group's contention that, in the context of stock acquisitions, I.R.C. § 197(d)(1)(E) only applies to acquisitions considered at least "substantial."

As previously mentioned, I.R.C. § 197(d)(1)(E) illustrates Congress' recognition that the difficulty and uncertainty in the valuation of corporate stock, combined with the rule allowing taxpayers to deduct and amortize covenants not to compete over their usually short useful lives, provided too much of an incentive for stock buyers, who entered into a covenant not to compete in connection with the acquisition of such stock, to overstate the cost of the covenant and understate the price of the stock. Congress thus attempted, under I.R.C. § 197, to reduce this

-19-

incentive and simplify the law regarding amortization of intangibles, by decreasing the tax benefit related to such covenants; more specifically, it required that they all be amortized over a fifteen-year period, instead of their usually short useful lives.

Furthermore, it is important to note that these concerns -- influencing Congress to include stock acquisitions in I.R.C. § 197(d)(1)(E) -- are present both where the taxpayer acquires a substantial and a less than substantial portion of a corporation's stock. That is, the fact that a taxpayer acquires a non-substantial portion of corporate stock -- as opposed to a substantial portion -- does not make the value of such stock any less difficult to quantify, because the goodwill and going concern components are still present even where a non-substantial portion of stock is transferred. Accordingly, a taxpayer who enters into and pays for a covenant not to compete (as the covenantee) -- in connection with the acquisition of a non-substantial portion of corporate stock -- generally has the same opportunity, for purposes of overstating the cost of the covenant and understating the value of the stock, as compared to a taxpayer who instead acquires a substantial portion of stock. Thus, Congress' concerns and purposes behind the enactment of I.R.C. § 197(d)(1)(E) strongly suggest that Congress intended that the section be made applicable to covenants entered into in connection with the acquisition of any

-20-

shares of corporate stock, regardless of whether they constitute a substantial portion of the corporation's total stock.

The situation is different, however, in the case of asset acquisitions, because a transfer of assets, which do not constitute a substantial portion of a trade or business, presumably does not encompass the transfer of goodwill or going concern, and, consequently, does not pose the same difficult valuation issues as a transfer of assets constituting a substantial portion of a trade or business, the value of which presumably includes goodwill and going concern. This difference explains why Congress chose different tax treatments for (1) covenants executed in connection with the acquisition of at least a substantial portion of assets constituting a trade or business, as opposed to (2) covenants executed in connection with the acquisition of less than a substantial portion of assets constituting a trade or business. Specifically, as both parties assert, in this context, Congress made I.R.C. § 197(d)(1)(E) applicable only to covenants not to compete entered into in connection with the acquisition of at least a substantial portion of assets constituting a trade or business. As previously explained, however, the reason for this difference in tax treatment is not present in the context of stock acquisitions.

Based on the above, we agree with the tax court and the IRS in that I.R.C. § 197(d)(1)(E) should be construed as follows: "the term 'section 197 intangible' means . . . any covenant not to

compete . . . entered into in connection with an acquisition . . . of [(1)] an interest in a trade or business or [(2)] [a] substantial portion [of assets constituting a trade or business]." Accordingly, we hold that, pursuant to this section, a "section 197 intangible" includes any covenant not to compete entered into in connection with the acquisition of any shares -- substantial or not -- of stock in a corporation that is engaged in a trade or business.

We find that this interpretation comports better with the purposes of I.R.C. § 197 and responds to Congress' reiterated intentions of simplifying the law regarding the amortization of intangibles and reducing the voluminous amount of litigation that has characterized this area. Based on the legislative history, we doubt Congress chose to spur a new wave of litigation in this area by unnecessarily requiring taxpayers and the IRS to litigate what may constitute a "substantial portion" of corporate stock.

Having found that I.R.C. § 197(d)(1)(E) applies to covenants not to compete entered into in connection with the acquisition of any shares of corporate stock, we conclude in the instant case that the Covenant, which was entered into by Recovery Group in connection with the redemption (i.e., indirect acquisition) of 23% of its stock, was a "section 197 intangible." Moreover, because Recovery Group does not allege that any exception applies, we conclude that the Covenant was an "amortizable section

-22-

197 intangible" subject to the fifteen-year amortization period prescribed under I.R.C. § 197(a). We therefore affirm the tax court's decision as to the tax deficiencies in question.

## IV. Conclusion

For the reasons stated, we conclude that the Covenant was an "amortizable section 197 intangible" subject to the fifteen-year amortization period set forth under I.R.C. § 197(a). Accordingly, we affirm the tax court's determination regarding the tax deficiencies disputed in this appeal.

Affirmed.